*MHN*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RECEIVED

DEC X 1 2009

MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

| | | |
|---|---|---|
| LEONCIO ELIZARRI, | ) | |
| | ) | |
| Plaintiff, | ) | 07 C 2427 |
| | ) | |
| vs. | ) | Honorable Judge |
| | ) | Joan Gottschall |
| SHERIFF OF COOK COUNTY AND | ) | |
| COOK COUNTY, ILLINOIS, | ) | Magistrate Judge Soat Brown |
| | ) | |
| Defendants. | ) | |

FILED
Dec 2, 2009
DEC - 2 2009 JH
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**SHERIFF THOMAS DART'S RESPONSE TO PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**

NOW COMES Defendant SHERIFF THOMAS DART, by and through his attorney ANITA ALVAREZ, STATE'S ATTORNEY OF COOK COUNTY, by her Assistant State's Attorney Ronald Weidhuner, for Defendant's Response to Plaintiffs Motion for Class Certification asking this Court to deny the motion for class certification because the Plaintiffs fail to meet the criteria under Fed. R. Civ. P. 12(b) and Fed. R. Civ. P. 23(a). In support, the Defendant states as follows:

**INTRODUCTION**

The motion for class certification should be denied. Class treatment is inappropriate because each incident of missing personal property is an individualized factual event subject to case-by-case analysis. Plaintiffs seek to have the class certified under Federal Rules of Civil Procedure 23(b)(3). Plaintiffs define the proposed class as, "All persons who, on and after June 6, 2005, learned that property taken from them upon admission to the Cook County Jail had been lost or stolen." (Plaintiffs Motion for Class Cert., page 1). Plaintiffs argue the Sheriff's policies and procedures to comply with the holding of Plaintiffs property while incarcerated were not

1

proper in their application. This is not a question of constitutionality. In addition, Defendants'

were merely complying with the Cook County Procedure for Intake Processing of New Inmates

and Court Return which states:

> At the property cage, the inmate turns in all his property and
> money to the property office. The property is inventoried and put
> in a property envelop with a copy of the receipt listing all the
> inmate's property and money. Both the inmate and the property
> officer sign this receipt. When this step is completed, the inmate
> and his packet are sent to the interview line. (Plaintiffs Exhibit 1).

Upon release from prison, an inmate has 90 days to claim his or her property with a

receipt. Cook County Department of Corrections General Order 14.7 states the Rules and

Regulations for Detainees, effective date July 27, 2007, states:

> The receiving party must have a picture identification and the
> inmate's property receipt. Items on receipt will be stored or a
> maximum of ninety (90) days from the discharge date. All
> property not returned to the discharged inmate or released to
> another individual within ninety (90) days from the discharge date
> will be disposed of. (Defense Exhibit 1).

The inmates are also given a packet entitled the Cook County Department of Corrections

Rules and Regulations for Detainees which is effective July 2007. (Defense Exhibit 2). This

packet is almost identical to Defense Exhibit 2. The Cook County Department of Corrections

Rules and Regulations for Detainees also states that discharged inmates have 90 days after their

release to claim their property. (Defense Exhibit 2). These Rules and Regulations have been

updated since the prior March 1998 date. The previous Cook County Department of Corrections

Rules and Regulations stated:

> Items on receipt will be stored for a maximum of 120 days from
> the discharge date. All property not returned to the discharged
> inmate or released to another individual within 120 days from the
> discharge date will be disposed of. (Defense Exhibit 3).

Thus, the Cook County Department of Corrections makes the procedure of inmate property very clear to both their employees and the inmates. In addition, Plaintiff does not specify through any of the 80 sworn declarations from members of a proposed class when they went to claim their property after their specified release date. (Plaintiffs Exhibit 11).Therefore, Defense cannot determine if the declarations fit into the current or previous Cook County Department of Corrections Rules and Regulations.

This case turns on individual issues. The purpose of a class action is to establish the law or facts of a multitude of significantly similar cases in a single action where having individual Plaintiffs would be burdensome to the judicial system. When the proper analysis of the cases sought to be included in the classes all require a case-by-case analysis, then the purpose of declaring the class cannot be achieved.

Plaintiffs have not suffered any actual injuries (physical injury, emotional injury or physical manifestation) and therefore could not be representative of any class. Plaintiffs are also unable to satisfy their burden on all of the remaining criteria necessary to establish class certification including: numerosity, commonality, typicality, adequacy, predominance and superiority. Finally, Plaintiffs definition of whom to include in the class is inappropriate for class certification. The definition of the proposed class is too broad and does not give enough specific information on who the class encompasses. Therefore, based upon the above statements and the following supportive arguments, Plaintiffs Motion for Class Certification should be denied.

## SUMMARY OF ARGUMENT

In his Memorandum, the Sheriff sets forth three reasons why this Court should dismiss Plaintiffs Complaint. Plaintiffs fail to establish class certification. First, Defendant is only

required to keep a discharged inmate's property for 90 days after their release date. Second, pursuant to Rule 12(b)(1), this Court lacks subject matter jurisdiction over this matter, because none of the Plaintiffs have standing to bring this lawsuit. Likewise, any errant loss of Plaintiff's property was the result of one or more mistakes or simple negligence, and not part of a policy or practice of the Sheriff. In fact, the Cook County Department of Corrections has a General Order 2.3, effective June 1, 1992, which states:

> All case and personal property is to be recorded on the pre-numbered triplicate intake receipt form for each inmate admission. The form shall list the amount of currency and coin and give a description and count of personal items. The intake receipt shall give the inmate's name, identification number, date, and the signature of the intake employee. The inmate shall also sign the receipt to confirm the accuracy of the money and property as listed on the receipt. (Defense Exhibit 4).

Finally, under Rule 12(b)(6), Plaintiffs have an adequate state law remedy for any loss of their personal property resulting from any negligence of the Sheriff's employees, namely, Illinois state court actions for conversion or a similar tort. For these reasons, the Sheriff's Motion to Dismiss and supporting Memorandum state sufficient grounds for this Court to dismiss Plaintiffs class action Complaint. In addition, Plaintiffs fail to establish the proposed class satisfies the requirements of Rule 23(a). While Plaintiffs fail to establish numerosity, commonality, typicality, adequacy, predominance and superiority, and a class definition.

## ARGUMENT

### I.  PLAINTIFFS FAIL TO ESTABLISH PROPOSED CLASS

### a) There is No Legal Requirement that the Sheriff Keep Detainee Property For More than 90 Days

Plaintiffs seek relief against the Sheriff for allegedly losing their personal property.

4

Contrary to this allegation, Plaintiffs never mention showing any receipt in order to pick up their property. Defendant's require proof of a receipt. Moreover, contrary to Plaintiffs claim, there is no legal requirement that the Sheriff store unclaimed detainee property for more than 90 days after a detainee's release. (Defense Exhibit 4). The Cook County Department of Corrections General Order 2.3, states inmates have 90 days from their discharge date to claim their property. All property not claimed within 90 days will be disposed of. (Defense Exhibit 4).

Plaintiffs attempt to argue that the Sheriff has somehow breached a duty to them by not doing something that he is not required to do, simply because Plaintiffs believe he could or should do it. Such an assertion is wholly without merit. Plaintiffs apparent belief that the Sheriff should have a different policy and/or practice of mailing former detainees an additional "reminder" notice does not negate the policy and practice already in place, eliminate the notice detainees already receive on their property receipts, or diminish the Sheriff's full compliance with the requirements of Illinois law on this issue.

In fact, the Defendants go above and beyond in order to ensure discharged inmates claim their property. The Cook County Department of Corrections General Order 14.7 states, "The Property Office remains open twenty-four (24) hours a day." In addition, "upon the request of the inmate, CRW's will assist in the release of personal property to another individual or agency. The inmate will sign a release form identifying the name and address of the person authorized to receive the property. The receiving party must have picture identification." (Defense Exhibit 1). Therefore, not only is the office open 24 hours a day but an inmate can have a family member or friend retrieve their property as well up to 90 days after the discharged inmate's release. (Defense Exhibit 1).

5

Because there is no legal requirement for the Jail to store detainee property for more than

90 days year after their release (or to mail them any additional notices), Plaintiffs have no

protected interest in having their unclaimed property stored at the jail for more than 90 days.

Therefore, Plaintiffs have no basis for claiming that their procedural due process rights were

violated since Plaintiffs 80 sworn declarations do not state when any of the discharged inmates

went back to claim their property. Therefore, we have no way of knowing if the Plaintiffs claims

are within the 90 day requirement. Accordingly, Plaintiffs have failed to state a cause of action

that would entitle them to relief, and this Court should grant the Sheriff's Motion and dismiss

Plaintiffs Complaint.

### b) Any Improper Destruction of Plaintiffs Property Was the Result of Random, Unauthorized Negligence, and Not the Sheriff's Policy or Practice

Negligence alone cannot support a 1983 claim, and the protections of the Due Process

Clause are not triggered by negligence or a lack of due care by prison officials and no procedure

for compensation is required. *Sellers v. Henman*, 41 F.3d 1100, 1102-3 (7th Cir. 1994); *Daniels

v. Williams*, 474 U.S. 327, 330, 106 S. Ct. 662, 667 (1986). Moreover, where a prisoner alleges

a deprivation of property not because of some established state procedure, but rather because of

the unauthorized failure of state employees to follow established procedure, a due process

violation has not been alleged. *See Parratt v. Taylor*, 451 U.S. 527, 543, 101 S. Ct. 1908, 1917

(1981). *Parratt* is a controlling case. *Parratt* offered a test which stated, "In any 1983 action that

initial inquiry must focus on whether the two essential elements to a 1983 action are present: (1)

whether the conduct complained of was committed by a person acting under color of state law;

and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the

6

Constitution or laws of the United States." *Id.* at 530. While Plaintiffs may be able to satisfy the

"under color of the state law" element since Defendants' were county employees with authority;

Plaintiffs are not able to satisfy the second element. Plaintiffs were not deprived of any

Constitutional right.

Here, Defendants' in our case, have a procedure in place and were merely carrying out

their rules and regulations under the Cook County Department of Corrections General Order 2.3

(Defense Exhibit 1) and Cook County Department of Corrections General Order 14.7 (Defense

Exhibit 2). Nevertheless, as noted above, merely claiming that state employees have failed to

follow established procedures fails to properly allege a due process violation. Accordingly,

Plaintiffs have failed to properly allege a due process violation, and this Court should grant

Defendant's motion and dismiss Plaintiffs Complaint.

### c) Plaintiffs Have an Adequate State Court Remedy for Any Loss they Have Suffered

In cases of negligent or unauthorized actions by a government employee, the

requirements of due process are satisfied by the existence of an adequate, post-deprivation state

court remedy. *Perry v. Village of Arlington Heights*, 1995 U.S. Dist. LEXIS 880, *6 (N.D. Ill.

1995)(*citing Soldad v. County of Cook*, 923 F.2d 1241, 1248 (7th Cir. 1991)). In the instant case,

Plaintiffs have an adequate, post-deprivation state remedy for any loss they may have suffered.

Namely, Plaintiffs have the option of pursuing tort claims (e.g. a conversion or negligence

action) in Illinois court. However, there is no constitutional right requiring the Cook County

Department of Corrections ("CCDOC") to inform Plaintiffs on how or who to sue. Plaintiffs

Exhibit 4 states, "the jail provided Dexter Smith with a printed form, advising him to file a

lawsuit 'against the Cook County Department of corrections in PRO-SE Court." (Plaintiffs

Motion for Class Certification). Any information in which CCDOC offers is merely gratuitous and more than what Plaintiffs would have previously known. Thus, CCDOC is not constitutionally required to provide legal advice.

In the instant case, as in *Parratt*, Plaintiffs are detainees whose personal property was allegedly misplaced, lost or destroyed through the negligent acts of one or more state employees. *Parratt* stated that even if a plaintiff was deprived under color of state law, "the deprivation did not occur as a result of some established state procedure." *Parratt*, 451 U.S. at 534. In our case, Plaintiffs alleged deprivations were not the result of some established county procedure which encouraged misplacing inmates' belongings. In addition, in *Parratt*, "the State provides a remedy to persons who believe they have suffered a tortious loss at the hands of the State. [...] it provides only for an action against the State as opposed to its individual employees, it contains no provisions for punitive damages, and there is no right to a trial by jury." *Id.* Again the State is to provide the remedy despite Plaintiffs allegations that the CCDOC's personal misinformed Dexter Smith on who to sue. The CCDOC is not constitutionally required to provide free legal advice.

In our case, Plaintiffs have not been denied access to some state-created adjudicatory scheme, and there is no reason why the amount of time required for a full and fair adjudication of a state court tort claim would result in the Plaintiffs not being made fully whole (clearly, Plaintiffs are already willing to invest a significant amount of time in adjudicating their claims before this Federal Court). Accordingly, Plaintiffs have an adequate, post-deprivation remedy available in Illinois state court, which is all that due process requires, and this Court should grant Defendant's motion and dismiss Plaintiffs Complaint.

8

## II    THE PROPOSED CLASS DOES NOT SATISFY RULE 23(a)

### a)  Numerosity

Numerosity is at issue. Plaintiffs have attached sworn declarations from 80 members of the proposed class. However, there is no showing they requested their property returned within the 90 day period. Therefore the numerosity requirement has not been met. (Plaintiffs Exhibit 11).

### b)  Commonality

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. There is no question of law here since Plaintiffs are not claiming a breach of the constitution. "A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). It may be true that when "defendant[s] have engaged in [identified] standardized conduct toward members of the proposed class," the class satisfies Rule 23(a)(2)'s commonality requirement. See e.g. *Keele v. Wexler,* 149 F.3d 589 at 594. However, in cases so holding the complained of standardized conduct is not legal conduct but rather illegal conduct. In our case, Plaintiffs have identified no factual or legal issues which cause a constitutional violation. Defendant asserts that there are factual differences between the individual inmates property in question which preclude a commonality finding and that the identified similar facts are no more intrusive.

Additionally, there are 1-2 hundred newly arrested persons who enter the jail and have their property inventoried each day. While 80 declarations might satisfy the numerosity element, it does not satisfy commonality. This claim represents less than 1% of the people coming into the jail. Plaintiffs do not satisfy commonality under Rule 23(a)(2) since Plaintiffs are not challenging

9

a question of law. Also, Defendant's are not able to prove a question of fact since Defendant's conduct is not standardized.

### c) **Typicality**

The typicality requirement focuses on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). The representatives' claims are "typical if [they] arise from the same event or practice or course of conduct that gives rise to the claims of the other class members and [their] claims are based on the same legal theory." *De La Fuente,* 713 F. 2d at 232. Factual distinctions between the representative parties' claims and the class members' claims do not destroy typicality so long as the claims share the same legal theory. *Id.*

Typicality asks the question of whether Defendant has a policy causing property loss that is unconstitutional. Defendant does not have said policy, it's policy is Constitutional. In fact, Defendant was following the Cook County Procedure for Intake Processing of New Inmates and Court Return. This policy requires that inmates hand in their property. That said property is then inventoried and the inmate is given a receipt. (Plaintiffs Exhibit 1). Therefore, Defendant does not have a faulty policy in which causes inmates to lose their property. The return of property must be requested within 90 days of release. (Defense Exhibit 2).

### d) **Adequacy**

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, the interests of the representative parties must coincide with those of the rest of the class, and class counsel must be prepared and able to prosecute the action effectively. *See Retired Police Ass'n,* 7 F.3d at 598; *Levie v. Sears, Roebuck & Co.,* 496 F. Supp. 2d 944, 950 (N.D. Ill. July 17, 2007). Defendant

Sheriff Thomas Dart challenges the adequacy of the named Plaintiffs and contends those Plaintiffs interests are at odds with those of other putative class members if for no other reason than the fact that the interests of the remaining class members cannot be indentified to any reasonable degree.

Plaintiffs have failed to prove typicality of those plaintiffs already named. Therefore, this Court lacks any reasonable notion as to what the situation of additional members of the resulting class will resemble. This Court, therefore, has no way to determine if Plaintiffs can fairly and adequately represent the interest of the remaining class. Plaintiffs have previously said they already have four pending class action suits: *Bullock v. Sheahan*, 225 F.R.D. 227, 230 (N.D. Ill. 2004); *Parish v. Sheriff of Cook County*, 2008 WL 4812875 (07-CV-4369, N.D. Ill., Oct. 24, 2008); *Phipps v. Sheriff of Cook County*, 249 F.R.D. 298 (N.D. Ill. 2008), and *Streeter v. Sheriff of Cook County*, 256 F.R.D. 609 (N.D. Ill. 2009). Therefore, opposing counsel does not have the time nor the funds to take on another class action litigation. Opposing counsel, Morrissey and Flaxman, are solo practitioners stretched very thin. Either one of them can deny responsibility for this class action suit at any time. In order to avoid abandonment, this Court should begin a bidding process in search for a qualified attorney to take over if the motion for class action is granted.

### e) Predominance and Superiority

Even if Plaintiffs could establish all aspects of Rule 23(a)(1)-(4), Plaintiffs class still fails because Plaintiffs cannot complete the second prong of class certification: establishing that Plaintiffs claim falls under the class type indentified under Rule 23(b)(3). Rule 23(b)(3) requires the Court to find "that questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that the class action is *superior* to

other available methods for the *fair and efficient* adjudication of the controversy." Plaintiffs claim are not a question of law. Fed. R. Civ. P. 23(b)(3)(emphasis added). Generally, when a class challenges a uniform policy or practice, the validity of the policy or practice tends to be the predominant issue in the ensuing litigation. *See General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 159 n.15, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ("Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees."); *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992) (holding that certification was appropriate when plaintiffs alleged that defendant had "an ongoing scheme to defraud and deceive prospective students"). The motion in this case alleges the manner in which Sheriff's Deputies handled the inmates' personal property did not follow proper procedures. However, Cook County Department of Corrections has a General Order 2.3 that states all inmate property is inventoried and inmates are given a receipt of said property. (Defense Exhibit 4). Therefore, Defendant was following the proper procedures for handling Plaintiffs belongings.

The case at issue here is inappropriate for class certification because highly individualized factual analyses run in stark contrast to class certification. Here, Plaintiffs are bringing specific claims for specific items they have lost. These are single incidents. Plaintiffs are unable to meet their burden to show a predominating question of fact or law to establish the class considering the proper inquiry into each allegation is an individualized case-by-case analysis.

In addition to failing to establish questions of law or fact common to the members of the class which predominate over individual factual analysis; Plaintiffs also fail to show superiority. Plaintiffs must show that the class action method is superior to other available methods for the

12

fair and efficient adjudication of the issues. Plaintiffs have merely guessed that the class size is likely more than 800 persons. There is simply no justifiable reason that a class action is a superior venue to adjudicate the claims of four individuals. Plaintiffs have already filed their individual suits, wherein they can receive a proper and individualized assessment of the violation they allege.

Defendant should be given adequate time to find the property which has been lost or stolen before Plaintiffs file suit. Defendant has not been given the chance to exhaust its resources in conducting a search. Therefore, the class action suit is not a superior method for fair and efficient adjudication since Defendant's have not been given a fair chance at preventing litigation. If Defendant was given time, there might not be a reason to file suit at all.

Given that the Court is allowed to look beyond the complaint when determining class certification, it is relevant to consider Plaintiffs counsel history. Bringing these class actions could simply be part of a Morrissey-Flaxman business plan motivated solely by fees and not the vindication of fundamental rights. The difficulty of certifying a class here is that a $1,000.00-$10,000.00 case (taking into consideration that Plaintiffs have suffered no physical injury and have to date incurred no expense for mental injury) quickly becomes a $10,000,000.00 - $100,000,000.00 case. This is precisely why the Seventh Circuit permits review of certification decisions. Such a claim puts a bet-your-company decision to the Cook County Board and may induce a substantial settlement even if the Plaintiffs position is weak. The pressure that class certification places on the defendant, and the ensuing settlement, prevents resolution of the underlying issues. *See Szabo*, 249 F.3d at 675.

The motion is silent on the "*fair and efficient*" adjudication prongs. There is no showing of any "mad rush to the courthouse" to file lost property cases and it's because there is no real

injury from such restraint. Plaintiff alleges that if we file we get dismissed, but Courts order allowed re-filling with Sheriff as party. It is true that none of the currently named plaintiffs suffered any physical damages. In terms of efficiency, Plaintiffs argue that one case is better than hundreds, but those hundreds are not being brought. In terms of fairness, the *Szabo* case points out how unfair it is to a defendant to end up settling an otherwise non-meritorious case because of the risk of an even larger judgment. Therefore, Defendants state that allowing Plaintiffs class is neither fair nor efficient.

### f) Class Definition

The purported class as defined by Plaintiffs states, "All persons, who on and after June 6, 2005, learned that property taken from them upon admission to the Cook County Jail had been lost or stolen." This definition is unworkable. First, the class definition is inappropriate because the definition seeks to include hypothetical and future plaintiffs when it states "who on and after June 6, 2005, learned that property [was] taken." In order to have a claim, a plaintiff must first have been in involved in a transaction or occurrence and then suffered an injury from that transaction or occurrence. However, in the class definition, Plaintiffs seek to include unknown and hypothetical plaintiffs who have yet to knowingly suffer any incident, much less the injury. If Plaintiffs were concerned that the events occurring to them would continue to occur in the future to others, then such a claim is properly brought as an injunction. Plaintiffs definition leaves the inference that Plaintiff expects the Sheriff's behavior to continue unaltered, and rather than enjoin that behavior, Plaintiffs seek to find new parties to join Plaintiffs lawsuit. Regardless of the intent, it is improper to seek to join future tort victims as such a status under the law does not exist.

Secondly, Plaintiffs class definition is inaccurate because it does not specify if a

proposed class member has to produce a receipt of the property missing or proof of value. That said, a proposed class member can issue a claim for stolen property without producing any documentation or proof of the loss. This flawed definition will cause the Court a great deal of time and resources trying to figure out who has a legit claim.

### Conclusion

WHEREFORE, the MOTION FOR CLASS CERTIFICATION should be denied for failure to meet any one the requirements of Rule 12(b) and Rule 23(a) as typicality, commonality and adequacy of representation are lacking. Further, no identifiable issues of law or fact exist as plaintiffs have only enunciated one fact issue and that issue must be analyzed on a case-by-case basis. Finally, class certification is neither the superior, nor fair method of evaluation since no issues of fact predominate over individual questions, thus requiring case by case analysis. For these reasons and all others listed above, the Plaintiffs Motion for Class Certification should be denied.

Respectfully Submitted,

ANITA ALVAREZ
State's Attorney of Cook County

By: _____

Ronald Weidhuner
Assistant State's Attorney
Civil Actions Bureau
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-5527

# EXHIBIT 1

| | COOK COUNTY DEPARTMENT OF CORRECTIONS<br><br>**GENERAL ORDERS** | DISTRIBUTION<br><br>**A** | EFFECTIVE DATE<br><br>07/27/07 | GENERAL ORDER NO.<br><br>**14.7** |
|---|---|---|---|---|
| CHAPTER:<br>**Inmates Rights and Welfare** | | AMENDS:<br>**None** | | RESCINDS:<br>G.O.# 14.7-eff.<br>06/16/06 |
| SUBJECT:<br>**Rules and Regulations for Inmates** | | | | PAGE (S):<br>1 of 16 |
| A.C.A. REFERENCE: 4-ALDF-2A-08, 4-ALDF-2A-19, 4-ALDF-2A-21, 4-ALDF-2A-23, 4-ALDF-2A-25, 26,27,28,29, 4-ALDF-2A-44, 4-ALDF-2A-50, 4-ALFD-2A-60, 4-ALDF-2A-62, 63, 4-ALDF-2A-66, 4-ALDF-2C-01, 02, 4-ALDF-4C-01, 4-ALDF-4D-12, 4-ALDF-5A-04, 4-ALDF-5A-06, 4-ALDF-5A-09, 4-ALDF-5B-09, 4-ALDF-6A-02, 4-ALDF-6A-05, 06,07, 4-ALDF-6B-01, 01,03, 4ALDF-6C-01, 02,03, 4-ALDF-6D-01, 4-ALDF-7D-03 | | | ILCS REFERENCE:<br>701.50, 701.190 | |

## I.  POLICY

It is the policy of the Cook County Department of Corrections (CCDOC) to specify acts prohibited within the Department.  In order to maintain an orderly environment with clear expectations of behavior and a system of accountability, penalties have been set forth for various degrees of violations.

**RULES AND REGULATIONS**

### A.  Orientation

1.  Upon arrival to the CCDOC, each inmate will receive a written copy of the Inmate Rules and Regulations Handbook and an oral explanation of it. The CCDOC will also provide a written copy of the Inmate Rules and Regulations Handbook in any language used by a significant portion of the Department's inmate population.

2.  A copy of the Inmate Rules and Regulations Handbook will also be posted in areas where inmates are throughout the Department.

### B.  General Rules

1.  Inmates must pick up immediately when so ordered.
2.  Inmates must be fully clothed when outside their cells.
3.  Inmates may not wear or display any type of gang sign or symbol.
4.  Inmates must sweep cells, make beds and remove garbage from cells before each morning inspection.
5.  Inmates must wet mop cells at least every other day before morning inspection.
6.  Inmates may not attach objects to cell, living area walls, doors, windows or lights.  Doorways must be free from obstruction.
7.  Inmates may not display nude pictures or photographs.

8. Privileges begin when living unit and cells pass morning inspections.
9. Inmates will be held responsible for any damage(s) they cause to CCDOC property.
10. Inmates must keep dayroom area clean.
11. Inmates must have permission to enter the exercise area or multipurpose room.
12. Inmates may enter the visiting booth only when they have a visit.
13. Inmates will not be loud, boisterous or disruptive.
14. Inmates must comply with orders and directives given by Correctional personnel.
15. Inmates will remain silent when moved throughout the Department.
16. Inmates will not sit on stairs or tables in the living areas.
17. Inmates are required to maintain a level of personal hygiene consistent with group living.
18. Inmates will use the dayroom in accordance with the Living Unit Rotation Schedule.

## C. Rights and Responsibilities of CCDOC Inmates

1. Expect that as a human being, personnel will treat you respectfully, impartially and fairly.
2. Be informed of the rules and schedules concerning the operation of the Department.
3. Freedom of religious affiliation and voluntary religious worship.
4. Health care which includes nutritious meals, the opportunity to shower regularly, proper ventilation, a regular exercise period, toilet articles, medical and dental treatment.
5. Confidential access to the courts.
6. The right to consult with legal counsel by mail, telephone or personal interview.
7. Participate in the use of law library reference materials to assist in resolving legal problems.
8. Right to receive help when it is available at the law library.
9. Clean and sanitary living conditions.

## D. Prevention/Self Protection from Sexual Abuse/Assault

You may avoid an attack by keeping the following safety guidelines in mind:

1. Position yourself in " Safe Zone" areas where you can see personnel and personnel can see you. If you are being pressured for sex, report it to personnel immediately

2. Be aware of situations that make you feel uncomfortable. Trust your instincts. **IF IT FEELS WRONG, LEAVE, GET HELP OR CALL FOR PERSONNEL**

3. Don't let your manners or pride get in the way of keeping yourself safe. Don't be afraid to say "NO" or "STOP IT NOW"

4.     Walk and stand with confidence. Many predators choose victims who look like they won't fight back or are emotionally weak.

**E.   Reporting Sexual Abuse/Assault**

Get to a safe place. **REPORT THE ATTACK TO PERSONNEL IMMEDIATELY.** The longer you wait, the more difficult it is to obtain the evidence necessary for a criminal and/or administrative investigation. Request immediate medical attention, you may have serious injuries that you are not aware of and any sexual contact can expose you to sexually transmitted diseases. Do not shower, brush your teeth (if assault/abuse was oral), use the restroom or change your clothes. You may destroy important evidence.

**F.   Treatment and Counseling for Sexual Abuse/Assault Victims**

Victims of sexual abuse/assault will be given evaluations and treatment by medical personnel for any injuries inflicted by the abuse/assault. Victims may also receive counseling by psychiatric personnel.

**G.   Disciplinary Procedures**

1.     Any inmate charged with the commission of any act(s), where an inmate may be subject to disciplinary segregation, is entitled to due process procedures. Inmates will receive a copy of the four (4) part Inmate Disciplinary Report form stating the specific prohibited act(s) they are charged with and a brief statement of facts. Inmates will be entitled to a hearing and decision within seven (7) days excluding weekends and holidays. When an inmate is placed in Disciplinary Segregation before a disciplinary hearing is conducted, the Disciplinary Hearing Board will ensure that a hearing is completed within seventy-two (72) hours, including weekends and holidays. The Executive Director/designee may place an inmate in "Administrative Segregation" pending a disciplinary hearing for further instructions. Any time spent in pre-hearing detention will be credited against any subsequent disciplinary detention imposed.

2.     An inmate charged with a rule violation will have the opportunity to be present (but is not required), make a statement, present documentary evidence and call witnesses on their behalf when such witnesses are reasonably available and their presence is not deemed by the Board to be unduly hazardous to the Department's safety. The Disciplinary Hearing Board is empowered to impose appropriate sanctions when a charge is substantiated by information obtained in the hearing process.

3.     Inmates have the right to appeal any decision of the Disciplinary Hearing Board by filing a written request with the Superintendent of the division/unit in which the infraction took place. This appeal must be made within ten (10) working days from the date of being advised of the decision.

4. The divisional Superintendent/Unit head may affirm or reverse the decision outright, return the decision back to the Disciplinary Hearing Board for further proceedings, or modifications, but not increase the sanction imposed. A decision will be made within five (5) days, and a written copy of the decision will be provided to the inmate. The inmate will sign and date, indicating they have received notification of the appeal decision.

**THE CCDOC DOES NOT TOLERATE CRIMINAL ACTIVITIES OF ANY KIND. THE POSSESSION OF CONTRABAND, ASSAULTS AGAINST PERSONNEL OR OTHER INMATES AND DAMAGED TO COUNTY PROPERTY WILL BE REFERRED TO THE COOK COUNTY STATE'S ATTORNEY FOR CRIMINAL PROSECUTION.**

## H. Contraband

Items in your possession that have not been provided or approved by the CCDOC will be considered contraband, confiscated and a Disciplinary Report will be completed.

## I. Discipline Categories and Penalties

If you are found guilty of any of the acts listed below by a Disciplinary Hearing Board, you may receive one (1) or more of the following penalties: loss of work assignment, loss of good time, loss of commissary privileges, loss of visitation privileges, increase in security classification, financial restitution, or any combination of the above. When the charge of "Damaging or Altering Government Property" is sustained, the Disciplinary Hearing Board may reduce or increase the infraction category/charge depending on the amount of restitution that is required. For all other infractions the Disciplinary Hearing Board may reduce the category/charge during their deliberations, however the category/charge may not be increased.

| Category | Penalties |
| --- | --- |
| I | Verbal warning to 4 days in Disciplinary Segregation |
| II | 5 to 9 days in Disciplinary Segregation |
| III | 10 to 14 days in Disciplinary Segregation |
| IV | 15 to 19 days in Disciplinary Segregation |
| V | 20 to 24 days in Disciplinary Segregation |
| VI | 25 to 60 days in Disciplinary Segregation |

## CATEGORY I

**101** Possession of excess clothing and/or bedding.
**102** Failure to keep cell clean.
**103** Tattooing/possession of tattooing instruments.
**104** Littering.
**105** Affixing items to walls, light fixtures, or windows.

**106**    Wearing headbands or head coverings without authorization.
**107**    Violation of dress code.
**108**    Storing drinks or foods other than those packaged foods purchased through commissary.
**109**    Failure to remain silent during inmate movement through the Department.
**110**    Verbally or physically demonstrating disrespect to personnel.
**111**    Possession of contraband.
**112**    Damaging or altering CCDOC property (restitution .01-50.00).

## CATEGORY II

**201**    Use of obscene language to personnel and/or visitors.
**202**    Being in an unauthorized area.
**203**    Presenting false information to sworn personnel.
**204**    Violations of safety or sanitation regulations.
**205**    Engaging in inappropriate physical conduct.
**206**    Making sexual threats, proposals or gestures.
**207**    Committing any act that disrupts the orderly operation of the CCDOC.
**208**    Verbal threats to another person.
**209**    Possession of unauthorized medication.
**210**    Misuse of authorized medication.
**211**    Indecent exposure.
**212**    Possession and/or manufacture of unauthorized beverages (i.e. "hooch").
**213**    Possession of unauthorized monetary items (i.e. credit cards, money, checks, etc.).
**214**    Failure to stand for count or interfering with the taking of the count.
**215**    Violation of visiting regulations.
**216**    Violation of telephone or mail regulations.
**217**    Gambling.
**218**    Smoking.
**219**    Failure to comply with the Intake process.
**220**    Failure to follow the direction of Court Service Deputies while being escorted to/from or during judicial proceedings.
**221**    Possession of any tobacco or any tobacco related products (i.e. cigarettes, cigarette papers, lighters, matches, chewing tobacco and any other related materials).
**222**    Damaging or altering CCDOC property (restitution 50.01-100.00).

## CATEGORY III

**300**    Fighting
**301**    Refusing an order to lock-up.
**302**    Committing any act(s) that necessitates a security search by sworn personnel.
**303**    Damaging or altering CCDOC property (restitution 100.01-150.00).
**304**    Possession of stolen property.
**305**    Disobeying verbal or written orders from sworn personnel.
**306**    Sexual misconduct (voluntary).

## CATEGORY IV

**400** Possession of unauthorized clothing.
**401** Committing any act(s) that disrupts a judicial proceeding.
**402** Throwing or projecting any items or substance.
**403** Damaging or altering CCDOC property (restitution 150.01-200.00).

## CATEGORY V

**500** Theft.
**501** Committing any act(s) that requires personnel to use force against an inmate.
**502** Possession of counterfeit identification.
**503** Committing any act(s) that requires the use of force by Court Service Deputies while being escorted to/from, or during a judicial proceeding.
**504** Unauthorized possession of sworn personnel uniform(s) or equipment.
**505** Damaging or altering CCDOC property (restitution 200.01-250.00).
**506** Gang activity, participating in gang-related activity or communication.

## CATEGORY VI

**600** Murder.
**601** Assaulting any person.
**602** Sexual abuse/assault.
**603** Arson.
**604** Possessing, manufacturing, introducing any weapon, ammunition, explosive caustic substance, dangerous chemicals, sharpened instruments or unauthorized tools, intoxicants, narcotics, paraphernalia or drugs not prescribed for the individual, or any other dangerous or deadly weapon or substance (i.e. homemade weapons or any sharp instruments such as scissors, fingernail files and all items identified as contraband).
**605** Participating in major disturbances/riots.
**606** Escape/escape attempt.
**607** Battery.
**608** Intimidation, extortion, blackmail, threats by words, action or any other behavior.
**609** Gang recruitment.
**610** Attempting to commit any act(s) listed in Category VI, aiding and abetting any person in their commissions, planning to commit or soliciting to commit any offense will be considered the same commission as the act itself.
**611** Participating in a disturbance requiring deployment of specialized units (i.e. K-9, ERT, etc.).
**612** Damaging or altering CCDOC property (restitution 250.01 and above).
**613** Assault with a weapon on any person.

Case: 1:07-cv-02427 Document #: 56 Filed: 12/02/09 Page 23 of 67 PageID #:442

**J.    Repeat Violations and Criminal Charges**

Second or subsequent violations may be subject to the maximum number of days in the next highest category. Depending on the severity of the violation, criminal charges may be imposed pursuant to Illinois or Federal Laws.

**K.    Restitution**

1.    Inmates are held responsible for CCDOC property damaged and/or destroyed while in custody of the Sheriff of Cook County. Inmates are required to pay from their trust accounts for the repair, replacement and/or restoration of CCDOC property and/or any cost incurred by the Department (i.e. ambulance runs, overtime worked for sworn personnel, etc.) when it is determined by the Department's Disciplinary Hearing Board that the inmate is responsible for the damage.

2.    Upon a finding of GUILTY by the Disciplinary Hearing Board, the replacement cost of destroyed/damaged property and/or any cost incurred by the Department will be deducted from the inmate's trust account. In the event the funds in these accounts are not adequate to satisfy the replacement cost(s), an encumbrance will be placed on future monies received by the inmate until the final obligation is satisfied.

3.    Satisfaction of all claims will remain on file for seven (7) years, after the date of property destruction or damage. In the event an inmate is released with an encumbrance and subsequently re-incarcerated, required payment of the debt will remain active until satisfied.

**L.    Grievance Guidelines**

Inmates housed in the CCDOC may initiate written grievances regarding circumstances or action, which they feel may be discriminatory, oppressive or unjust. The following reasons are to be used as guidelines when determining when to file a grievance:

1.    Alleged violations of civil, constitutional or statutory rights
2.    Alleged criminal or prohibited acts by personnel
3.    Alleged violation of Departmental policy and procedures regarding the inmate's general welfare or safety
4.    To resolve concerns within the Department that creates unsafe or unsanitary living conditions
5.    To resolve issues related to an inmate's money, property, education and medical needs

**M.    *Detainee Grievance Forms*** will be available in all housing units. <u>When forms are unavailable, grievances can be submitted on plain paper.</u> Upon completion of the ***Detainee Grievance Form***, sworn personnel will collect grievances, Monday through Friday, in sealed envelopes. These sealed envelopes will be

delivered to the Correctional Rehabilitation Workers (CRW) in the respective division.

An independent Appeal Panel will review the inmate's appeal of the grievance findings.

1. If an inmate wishes to appeal the grievance decision, they may seek review directly from the Appeal Panel within fourteen (14) days of their receipt of the decision. Such requests for appeal should be made by contacting the CRW or by forwarding the request to sworn personnel during the grievance collection process.

2. The Appeal Panel will investigate each grievance as well as review the inmate's basis for an appeal. The Appeal Panel will accept or deny the appeal request and notate a response. If the appeal request is declined, the grievance process for the stated issue is complete. If the appeal request is accepted, the recommendation will be forwarded to the Executive Director/designee for approval, denial and/or action. The Appeal Board's response will be forwarded to the inmate within ten (10) days of the appeal review date.

3. It should be noted that grievances will not be initiated regarding findings of the Disciplinary Hearing Board, including restitution amounts. An appeal of the Board's findings regarding imposed discipline will be made directly to the division Superintendent/designee. All administrative decisions that effect the inmate's rights and welfare can be grieved, with the exception of Disciplinary Hearing Board decisions.

4. Please be reminded and assured that when the grievance is received in a sealed envelope during the collection process, the procedure is confidential, and the only authorized person to receive, process and forward the grievance is the CRW assigned to the division where the inmate is housed.

N. **Emergency Grievances** are those involving an immediate threat to the welfare or safety of an inmate. All emergency grievances placed in sealed envelope must be clearly labeled **"Emergency Grievance"**. The Correctional Officer assigned to the living unit will contact a Supervisor/Shift Commander who will deliver the grievance to a CRW for review and processing.

O. **Program, Services and Information "Request" Procedure**

The programs and services below are available to all inmates of the CCDOC, except where indicated. In most instances, a **Detainee Request Form** indicating a request for information or to participate in these programs should be filed out by the inmate and given to the Correctional Officer assigned to the living unit. The inmate may also submit the request to the appropriate department.

Please note: Request for Medical, Dental and Mental Health related services should be on the Health Care Request form and not the CCDOC request form.

**P.   Health Services**

Cermak Health Services or Cook County, and affiliate of the Cook County Bureau of Health Services, provides on-site medical, dental and mental health services. Hospitalization and specialized medical services are arranged with other Bureau affiliates (Stroger, Oak Forest and Provident Hospitals).

**Q.   Social Services**

CRW's are available to aid in requests for information, process referrals and seek resolution of inmate complaints, grievances and ongoing concerns. CRW's are assigned in each division and will provide information/services Monday through Friday, excluding government holidays. They also act as the inmate's link with families, friends and other various outside agencies. CRW's may assist in arranging emergency phone calls. Pre-paid stamped envelopes may be given to indigent inmate when available. Issues regarding money, the release of personal property and documents requiring an inmate's signature will also be handled by the CRW.

**R.   Law Library Services**

1.   All inmates housed in the CCDOC will have access to legal information related to their case(s). Law Libraries located throughout the Department are made available by the CRW.

2.   Law Library Services are available twice daily, Monday through Friday for researching criminal and civil matters. Law Library sessions will be, at minimum, one (1) hour and a half. ***Detainee Request Forms*** must be utilized for accessing each session. Access requests will be limited to one (1) session per week. The request forms will be forwarded to the Law Library for scheduling.

    a.   Inmates with court orders that stipulate Law Library access, and those inmates who act as their own attorney, will be allowed access according to the provisions of the court order.

    b.   Inmates that have pending court dates; with the closest upcoming court date will be allowed access.

3.   Photocopies and assistance with postage for legal mail are available to inmates; however, if the inmate is indigent these services will be provided without cost. Please see the Law Library personnel for guidelines and limitations.

S.    **Religious Services**

Religious volunteers provide spiritual guidance, bible studies, Holy Day observation programs and worship services for many denominations on a regular basis. In addition, chaplains provided individual counseling.

T.    **Educational Programs**

1.    Eligible inmates from 17 to 21 years of age may enroll in the Chicago Public School/York Alternative High School. Inmates may work toward achieving a General Equivalency Diploma (GED) and/or classroom credits. This program is available to all inmates in every security classification. If more information is needed, please submit a ***Detainee Request Form***. The CRW will refer all requests directly to the designated school representative.

2.    Programmed Activities for Correctional Education (PACE) is a non-profit educational program available to inmates of any age. This program offers literacy education, volunteer tutorials and GED preparations. In addition, individual and group educational counseling is available. This program is not open to all inmates; more information can be obtained from the CRW.

3.    City Colleges of Chicago provides GED preparation instruction to inmates twenty-two (22) years of age and older. This program is not open to all inmates; more information can be obtained from the CRW.

U.    **Substance Abuse Treatment**

Inmates who desire to begin a treatment program for substance abuse should complete a ***Detainee Request Form***. All requests will be forwarded to a Drug Unit Coordinator for review and consideration. Participation in this program is limited to space availability and security classification requirements.

V.    **Sheriff's Female Furlough Program (SFFP)**

SFFP combines the use of electronic monitoring devices and components of daytime programming to provide selected participants with a maximum level of supervision as well as the opportunity to participate in life skills programming.

W.    **Administrative Mandatory Furlough (AMF)**

When the AMF program is being utilized, inmates are automatically screened for eligibility. Inmates that meet eligibility requirements may be released on AMF. If incarceration or case information has changed after intake, inmates can submit a request for reconsideration. The CRW will forward this request to the Classification Department for review and consideration.

X.   **Electronic Monitoring (EM)**

Upon entry into the CCDOC, all inmates are automatically screened for eligibility. Inmates that meet eligibility requirements may be release on EM. If incarceration of case information has changed after intake, inmates can submit a request for reconsideration. The CRW will forward this request to Department of Community Supervision and Intervention (DCSI) for review and/or response.

Y.   **Department of Community Supervision and Intervention (DCSI)/Day Reporting**

Inmates participating in the EM program are automatically screened for eligibility. Inmates that meet requirements may be released on Day Reporting.

Z.   **Chicago Legal Aid to Incarcerated Mothers (CLAIM)**

A non-profit agency that provides free legal services to incarcerated mothers to help benefit their children and families.

AA.  **My Sister's Keeper**

A complete after-care program that assists women who have been recently released from the correctional system in the following areas: educational referral, shelter care, self-esteem and family/individual counseling.

BB.  **Veteran Assistance**

A representative from the Veteran Administration is available to provide information and assistance to inmates regarding healthcare, housing, education and many outgoing basic needs.

CC.  **General Library**

Facilities for general reading and participation in the Clarence Darrow Art Program are available to inmates. For additional information, please submit a *Detainee Request Form* to the CRW.

DD.  **Marriages**

Inmates may get married while in CCDOC custody. A presiding judge from the Criminal Courts will establish the marriage date(s) and notify the CCDOC and inmates accordingly. CCDOC Program Services personnel will assist the inmate and fiancé with procedural information and required documentation. Additional information can be obtained by submitting a *Detainee Request Form* to the CRW.

EE.    **Voter Registrations and Absentee Balloting**

Pre-trial inmates who are residents of Cook County will be able to register to vote and cast absentee ballots in all elections while they are incarcerated. The Chicago Board of Elections and/or the Cook County Board of Elections will make eligibility requirements available. All elections are held under the supervision of a representative from the Board of Election Commissioners.

FF.    **Minors**

Individuals who are under the age of seventeen (17) and incarcerated in the CCDOC should immediately notify sworn personnel and/or a CRW. The CCDOC will begin an age verification and/or custody transfer process.

GG.    **Personal Hygiene**

All inmates are expected to maintain personal body cleanliness. Showers are located in the living units for inmate use. Upon intake, inmates will be issued a uniform, soap, toothpaste, toothbrush and bed linens. Personal care and hygiene items are available through the commissary.

HH.    **Laundry**

Inmates will be given the opportunity to exchange linen and uniforms on a weekly basis.

II.    **Barber/Beauty Shop**

All inmates have routine access to barber/beauty shop services that are provided and scheduled in each division.

JJ.    **Meals**

The CCDOC serves three (3) meals a day. Special diets may be approved upon written request and availability.

KK.    **Commissary**

Commissary is available weekly according to schedules posted in each division and sells a variety of food and personal hygiene products to inmates that have unencumbered funds in their Trust Account. The weekly spending limit is $100.00. The Executive Director/designee will determine adjustments to this amount.

LL.    **Trust Department**

The Trust Department holds funds for inmates while they are incarcerated at the CCDOC. Any money in the possession of the inmate when they enter the CCDOC is deposited in an account bearing the name and identification number

of the inmate. After arrival, the only authorized means of receiving funds for an inmate is in the form of money orders, cashier's checks and certified checks, which must be sent by mail. <u>Personnel checks are **not** accepted.</u> All money orders, etc., must bear the inmate's name and identification number and not exceed $100.00 at any one (1) time. Ten (10) business days are required before these funds can be used for any purpose other than Commissary. Western Union and Money Gram can be utilized to transfer funds to the CCDOC. Please contact the CRW for information.

## MM. Mail

1. Outgoing Mail

   When the inmate bears the mailing cost, there is no limit on the volume of letters an inmate will be permitted to send. Writing supplies and stamps are available through the Commissary.

   a. All outgoing mail shall be clearly marked with the inmate's name, complete and correct identification number and Department address.

      **Mail not addressed as shown below shall be returned to the inmate, provided inmate is known. If the inmate is unknown, the mail shall be disposed of.**

      Inmate's Name _____ I.D.# _____
      Division _____ Living Unit _____
      P.O. Box 089002
      Chicago, IL 60608

              Addressee's Full Name _____
              Addressee's Address _____
              City, State Zip Code _____

   b. Inmates shall submit all non-privileged mail in unsealed envelopes.

   c. Outgoing non-privileged mail may be reproduced or withheld from delivery if it presents a threat to the security or safety of the Department.

   d. Inmates shall be notified in writing of any outgoing mail that has been withheld.

   e. Inmates will not be allowed to correspond with members of their immediate family who are incarcerated in other correctional institutions if those institutions refuse to allow such correspondence.

**Inmates of this Department may send and receive mail from residents of other institutions when joint prior approval is obtained from the administration of both institutions.**

f.     Sworn personnel shall collect all outgoing mail on a daily basis from inmates.

g.     Outgoing mail shall be picked up from the divisions/units and delivered to the U.S. Postal Service by mailroom personnel (Monday – Friday).

2.     Incoming Mail

Inmates shall be permitted to receive an unlimited number of letters. Any incoming mail that does not clearly identify the sender will be destroyed. Any incoming mail that does not clearly identify the addressee (including the complete and correct inmate number) will be returned to the sender. Incoming mail addressed to inmates must contain the following information:

Inmate Name _____ I.D. # _____
Division _____ Living Unit _____
P.O. Box 089002
Chicago, IL 60608

a.     All incoming non-privileged mail shall be opened and examined for contraband prior to leaving the mailroom and delivery to the divisions/units by mailroom personnel.

b.     An inmate will not be allowed to open, read, pick-up or deliver another inmate's mail.

**NN.**    **Telephone**

Telephones are located in the living units. Inmates will share the use of telephones in the living units. Telephones will not accept incoming calls. Telephone privileges will begin after the living unit passes daily inspection. Inmates are permitted to use the telephone whenever they are in the dayroom. Outgoing telephone calls will be billed as collect. If the person being called accepts the call, they will be charged for the call. Telephone calls will have a time frame of a minimum of five (5) minutes and a maximum of fifteen (15) minutes per call. After fifteen (15) minutes, the call will be cut off by the telephone system. Abuse or illegal use of the telephone privileges may result in the loss of privileges, disciplinary action and/or criminal charges. Telephone calls may be monitored; a disclaimer is posted in each living unit.

**OO.** **Personal Property**

At discharge, the inmate shall present a valid picture identification card to the Property Officer. The Property Office remains open twenty-four (24) hours a day. No money will be released without picture identification. Release of funds cannot be processed until the Commissary Department confirms all payments have been cleared. No cash payouts will be made. Checks will be issued for remaining account balances. Upon the request of the inmate, CRW's will assist in the release of funds to another individual or agency. The receiving party must have a picture identification and the inmate's property receipt. Items on receipt will be stored for a maximum of ninety (90) days from the discharge date. All property not returned to the discharged inmate or released to another individual within ninety (90) days from the discharge date will be disposed of. Upon the request of the inmate, CRW's will assist in the release of personal property to another individual or agency. The inmate will sign a release form identifying the name and address of the person authorized to receive the property. The receiving party must have picture identification.

**PP.** **Bond Office**

The Bond Office is open from **9:00 a.m. – 9:00 p.m.**, three hundred and sixty-five (365) days per year and accepts payment by cash, cashier's check, certified checks or credit card. The Bond Clerk must verify cashier and certified checks with the bank. Checks are to be made payable to: **Clerk of the Circuit Court**. Credit cards will be accepted in accordance with the guidelines set by the Circuit Court of Cook County.

**QQ.** **Internal Investigations**

Internal Affairs Department (IAD) will investigate any threat of harm committed against inmates or CCDOC personnel or any criminal offenses, disturbances or threats to the order and welfare of the CCDOC thoroughly and confidentially.

**RR.** **Fire Drills**

Fire drills are conducted periodically. Inmates are expected to move promptly in an orderly fashion during such drills and to follow the directives of the correctional personnel. In the event of a Department evacuation or emergency, follow all directions by correctional personnel while maintaining silence and order. Exit signs are located throughout the Department to assist in the evacuation of personnel and inmates during an emergency.

**SS.** **Family Contact Information**

Inmate's next of kin or other designated individual(s) shall be notified in case of death or serious illness. This information shall be obtained from the inmate at the time of in-take processing and maintained in the inmate's central file.

**TT.    Wake Orders**

Wake Orders for inmates will be executed according to Departmental policy and procedures. Any costs incurred by the Department for the wake order may be deducted from the inmate's Trust Account. If the inmate is indigent the costs may be deducted from the Inmate Welfare Fund.

**UU.    Visitation**

All persons entering or exiting the CCDOC will be required to produce one (1) valid government picture identification (i.e. Driver's License, State Identification Card, Passport, etc). If a government ID is not available, a combination of the following is acceptable: Public Aid Card accompanied by Medical Card and/or Voter's Registration Card. No one under the age of seventeen (17) will be allowed to enter unless accompanied by an adult. All bags and containers will be searched for contraband before the visitor is permitted to enter the CCDOC. All visitors will be subject to search under existing Departmental guidelines.

**Any visitor attempting to introduce contraband into the CCDOC will be subject to criminal prosecution under existing Illinois Compiled Statutes code 720.ILCS 5/31 A.1.**

For inmate information regarding the visitation schedule and visitation procedures, please call **1-773-869-5245 (JAIL).**

**VV.    Location**

The CCDOC is accessible by several bus lines operated by the Chicago Transit Authority. Persons interested in transportation information and/or directions to the CCDOC can contact the Regional Transportation Authority for specific routes and schedule times.

The CCDOC is located at **2700 South California Avenue, Chicago, Illinois 60608** in the **County of Cook.**

**NOTE:** All of the above rules and regulations are subject to change to ensure the safety and security of the Department as determined by the Sheriff of Cook County/designee.

---

**AUTHORIZED BY:**

_____          _____
Executive Director - Salvador Godinez                    Date

## Orientation

Upon arrival to the Cook County Department of Corrections (CCDOC), each inmate will receive a written copy of the rules and regulations and an oral explanation of them. The CCDOC will also provide a written copy of the rules and regulations in any language used by a significant portion of the Department's inmate population.

A copy of the rules and regulations will also be posted in inmate areas throughout the CCDOC.

## General Rules

1. Inmates must lock up immediately when so ordered.
2. Inmates must be fully clothed when outside their cells.
3. Inmates may not wear or display any type of gang sign or symbol.
4. Inmates must sweep cells, make beds, and remove garbage from cells before each morning inspection.
5. Inmates must wet mop cells at least every other day before morning inspection.
6. Inmates may not attach objects to cell, living area walls, doors, windows, or lights. Doorways must be free from obstruction.
7. Inmates may not display nude pictures or photographs.
8. Privileges begin when living unit and cells pass morning inspections.
9. Inmates will be held responsible for all damage to CCDOC property.
10. Inmates must keep dayroom area clean.
11. Inmates must have permission to enter the exercise area or multipurpose room.
12. Inmates may enter the visiting booth only when they have a visit.
13. Inmates will not be loud, boisterous or disruptive.
14. Inmates must comply with orders and directions given by correctional personnel.
15. Inmates will remain silent when moved throughout the Department.
16. Inmates will not sit on stairs or tables in the living areas.
17. Inmates are required to maintain a level of personal hygiene consistent with group living.
18. Inmates will use the dayroom in accordance with the Living Unit Rotation Schedule.

## Rights and Responsibilities of CCDOC Inmates

1. Expect that as a human being all personnel will treat you respectfully, impartially and fairly.
2. Be informed of the rules and schedules concerning the operation of the Department.
3. Freedom of religious affiliation and voluntary religious worship.
4. Health care which includes nutritious meals, the opportunity to shower regularly, proper ventilation, a regular exercise period, toilet articles, medical and dental treatment.
5. Confidential access to the courts.
6. The right to consult with legal counsel by mail, telephone or personal interview.
7. Participate in the use of the law library reference materials to assist in resolving legal problems.
8. Right to receive help when it is available at the law library.
9. Clean and sanitary living conditions.

## Prevention/Self Protection from Sexual Abuse/Attack

You may avoid an attack by keeping the following safety guidelines in mind.

1. Position yourself in "Safe Zones" areas where you can see personnel and personnel can see you. If you are being pressured for sex, report it to any personnel immediately.
2. Be aware of situations that make you feel uncomfortable. Trust your instincts. **IF IT FEELS WRONG, LEAVE, GET HELP, OR CALL OUT FOR PERSONNEL.**
3. Don't let your manners or pride get in the way of keeping yourself safe. Don't be afraid to say "NO" or "STOP IT NOW."
4. Walk and stand with confidence. Many predators choose victims who look like they won't fight back or are emotionally weak.

## Reporting Sexual Abuse/Assault

Get to a safe place. **REPORT THE ATTACK TO PERSONNEL IMMEDIATELY.** The longer you wait, the more difficult it is to obtain the evidence necessary for a criminal and/or an administrative investigation. Request immediate medical attention; you may have serious injuries that you are not aware of, and any sexual contact can expose you to sexually transmitted diseases. Do not shower, brush your teeth if the (abuse/assault was oral], use the restroom, or change your clothes. You may destroy important evidence.

## Treatment and Counseling for Sexual Abuse/Assault Victims

Victims of sexual abuse/assault shall be given evaluations and treatment by medical personnel for any injuries inflicted by the abuse/assault. Victims may also receive counseling by psychiatric personnel.

## Disciplinary Procedures

Any inmate charged with the commission of any act(s), where an inmate may be subject to disciplinary segregation, is entitled to the due process procedures. Inmates will receive a copy of the four-part Disciplinary Report form stating the specific prohibited act(s) they are charged with and a brief statement of facts. Inmates will be entitled to a hearing and decision within seven (7) days excluding weekends and holidays. When an inmate is placed in disciplinary segregation before a disciplinary hearing is conducted, the Disciplinary Hearing Board will ensure that a hearing is completed within in 72 hours, including weekends and holidays. The Executive Director/designee may place an inmate under "administrative lock-up" pending a disciplinary hearing or further instructions. Any time spent in pre-hearing segregation will be credited against any subsequent disciplinary detention imposed.

An inmate charged with a rule violation will have the opportunity (but is not required) to be present, make a statement, present documentary evidence and call witnesses on his or her behalf when such witnesses are reasonably available and their presence is not deemed by the Hearing Board to be unduly hazardous to Departmental safety. The Disciplinary Hearing Board is empowered to impose appropriate sanctions when a charge is substantiated by information obtained in the hearing process.

The CRW will forward this request to the Classification Department for review and consideration.

### Electronic Monitoring (EM)

Upon entry into the CCDOC, all inmates are automatically screened for eligibility. Inmates that meet eligibility requirements may be release on EM. If incarceration or case information has changed after intake, inmates can submit a request for reconsideration. The CRW will forward this request to DCSI for review and/or response.

### Department of Community Intervention and Supervision (DCSI)/Day Reporting

Inmates participating in the EM program are automatically screened for eligibility. Inmates that meet requirements may be released on Day Reporting.

### Chicago Legal Aid to Incarcerated Mothers (CLAIM)

A non-profit agency that provides free legal services to incarcerated mothers to help benefit their children and families.

### My Sister's Keeper

A complete after-care program that assists women who have been recently released from the correctional system in the following areas: educational referral, shelter care, self-esteem and family/individual counseling.

### Veterans Assistance

A representative from the Veterans Administration is available to provide information and assistance to inmates regarding healthcare, housing, education and many ongoing basic needs.

### General Library

Facilities for general reading and participation in the Clarence Darrow Art Program are available to inmates. For additional information, please submit an *Inmate Request Form* to the CRW.

### Marriages

Inmates may get married while in CCDOC custody. A presiding judge from the Criminal Courts will establish the marriage date(s) and notify the CCDOC and inmates accordingly. CCDOC Program Services personnel will assist the inmate and fiancé with procedural information and required documentation. Additional information can be obtained by submitting an *Inmate Request Form* to the CRW.

### Voter Registration and Absentee Balloting

Pre-trial inmates who are residents of Cook County will be able to register to vote and cast absentee ballots in elections while they are incarcerated. The Chicago Board of Elections and/or the Cook County Board of Elections will make eligibility requirements available. All elections are held under the supervision of a representative of the Board of Election Commissioners.

### Minors

Individuals who are under the age of 17 and incarcerated in the CCDOC should immediately notify sworn personnel and/or the CRW. The CCDOC will begin an age verification and/or custody transfer process.

### Personal Hygiene

All inmates are expected to maintain personal body cleanliness. Showers are located in the housing areas for inmate use. Upon intake, inmates will be issued a uniform, soap, toothpaste, toothbrush and linens. Personal care and hygiene items are available through th commissary.

### Laundry

Inmates will be given the opportunity to exchange linen and uniforms on a weekly basis.

### Barber/Beauty Shop

All inmates have routine access to barber/beauty shop services that are provided and scheduled in each division.

### Meals

The CCDOC serves three (3) meals a day. Special diets may be approved upon written request, and are available.

### Commissary

Sells a variety of food and personal hygiene products to inmates that have unencumbered funds in their trust account. Commissary is available weekly according to schedules posted in each division. The weekly spending limit is $100.00. The Executive Director/designee will determine adjustments to this amount.

### Trust Department

Holds funds for inmates while they are incarcerated at the CCDOC. Any money in the possession of the inmate when they enter the CCDOC is deposited in an account bearing the name and identification number of the inmate. After arrival, the only authorized means of receiving funds from the outside is in the form of money orders, cashier's check and certified checks, and must be sent by mail. Personal checks are not accepted. All money orders, etc., must bear the inmate's name and identification number and not exceed $100.00 at any one (1) time. Ten (10) business days are required before these funds can be used for any purpose other than commissary. Western Union and Money Gram can be utilized to transfer funds to the CCDOC. Please contact the CRW for information.

### Mail

Inmates will be permitted to receive mail while incarcerated, provided that, at the time of admission to the Department, each inmate had given their consent for designated CCDOC personnel to open and inspect incoming mail in accordance with CCDOC regulations and relevant laws. If an inmate does not give their consent to such inspection, all mail addressed to the individual will be returned to the Post Office unopened and marked "Refused". Outgoing mail may be opened, read or censored. Any incoming mail that does not clearly identify the addressee (including the complete and correct inmate number) will be returned. All incoming and outgoing mail must have complete information from sender and addressee.

Outgoing mail should have the following information in the return address corner:

Inmate's Name _____ ID # _____
Division_____ Wing/Cell_____
P.O. Box 089002
Chicago, Illinois 60608

Incoming mail should have the following information:

Sender's Full Name
S~ ~er's Full Address
{    :r's Zip Code

Inmates Name _____ ID # _____
Division _____ Wing/Cell _____
P.O. Box 089002
Chicago, Illinois 60608

## Telephones

Telephones are located in living units. Inmates will share the use of telephones in the living unit. Telephones will not accept incoming calls. Telephone privileges will begin after the living unit passes daily inspection. Inmates are permitted to use the telephone whenever they are in the dayroom. Outgoing telephone calls will be billed as collect calls. If the person being called accepts the call, they will be charged for the call. Telephone calls will have a time frame being a minimum of five (5) minutes and a maximum of fifteen (15) minutes per call. After 15 minutes, the call will be cut off by the telephone system. Abuse or illegal use of the telephone privileges may result in the loss of privileges, disciplinary action or criminal charges.

## Personal Property

At discharge the inmate shall present himself or herself to the Property Office with valid picture identification. The Property Office remains open 24 hours a day. No money can be given without picture identification. Release of f~ ~ cannot be processed until the Commissary L~ ~rtment confirms all payments have been cleared. No cash payouts will be made. Checks will be issued for remaining account balances. Upon the request of an inmate, CRW's will assist in the release of money to another individual or agency. The receiving party must have picture identification and the inmate's property receipt. Items on receipt will be stored for a maximum of ninety (90) days from the discharge date. All property not returned to the inmate or released to another individual within the ninety (90) days from the discharge date will be disposed of. Upon the request of the inmate, CRW's will assist in the release of personal property to another individual or agency. The inmate will sign a release form identifying the name and address of the person authorized to receive the property. The receiving party must have picture identification.

## Bonding Office

The Bond Office is open from **9:00 a.m. – 9:00 p.m.**, three hundred and sixty-five (365) days per year and accepts payment by cash, cashier's check, certified checks or credit card. The bond clerk must verify cashier and certified checks with the bank. Checks are to be made payable to: **Clerk of the Circuit Court.** Credit Cards will be accepted in accordance with the guidelines set by the Circuit Court of Cook County.

## Internal Investigations

I~ ~nal Affairs Department (IAD) will investigate any t~. ~t of harm committed against inmates, or CCDOC personnel or any criminal offenses, disturbances or threats to the order and welfare of the CCDOC thoroughly and confidentially.

## Fire Drills

Fire drills are conducted periodically. Inmates are expected to move promptly in an orderly fashion during such drills and to follow the directives of sworn personnel. In the event of a Department evacuation or emergency, follow all directions by sworn personnel while maintaining silence and order. Exit signs are located throughout the Department to assist in the evacuation of personnel and inmates during an emergency.

## Family Contact Information

Inmate's next of kin or other designated individual(s) shall be notified in case of death or serious illness. This information shall be obtained from the inmate at the time of admission and maintained in the inmate's central file.

## Wake Orders

Wake Orders for inmates will be executed according to Departmental policy and procedures. Any costs incurred by the Department for the wake order may be deducted from the inmate's Trust Account. If the inmate is indigent the costs may be deducted from the Inmate Welfare Fund.

## Visitation

All persons entering or exiting the CCDOC will be required to produce one (1) valid government picture identification which will include: Driver's License, State Identification card, Passport, etc. If a government ID in not available, a combination of the following are acceptable: Public Aid card accompanied by Medical card and/or Voter's Registration card. No one under the age of 17 years of age will be allowed to enter unless accompanied by an adult. All bags and containers will be searched for contraband before the visitor is permitted to enter the CCDOC. All visitors will be subject to search under existing Departmental guidelines.

**Any visitor attempting to introduce contraband into the CCDOC will be subject to criminal prosecution under existing Illinois Compiled Statues Code 720.ILCS 5/31 A.1.**

For inmate information regarding the visitation schedule and visitation procedures, please call **1-773-869-5245.**

## Department Location

The Cook County Department of Corrections is accessible by several bus lines operated by the Chicago Transit Authority. Persons interested in transportation information and/or directions to the CCDOC can contact the Regional Transportation Authority for specific routes and schedule times.

The Cook County Department of Corrections is located at **2700 S. California Avenue, Chicago, Illinois 60608** in the **County of Cook.**

**NOTE: All of the above rules and regulations are subject to change to ensure the safety and security of the Department as determined by the Sheriff of Cook County or Designee.**
*******************************************************
**AUTHORIZED BY:**

_____         7/27/07
**EXECUTIVE DIRECTOR - SALVADOR GODINEZ. – DATE**

*Emergency Grievances* are those involving an immediate threat to the welfare or safety of an inmate. All emergency grievances placed in a sealed envelope must be clearly labeled **"EMERGENCY GRIEVANCE"**. The Correctional O___er assigned to the living unit will contact a ___visor/Shift Commander who will deliver the grievance to a CRW for review and processing.

## Program, Services and Information "Request" Procedure

The programs and services described below are available to all inmate of the CCDOC, except where indicated. In most instances a *Inmate Request Form* indicating a request for information or to participate in these programs should be filled out by the inmate and given to the Correctional Officer assigned to the living unit. The inmate may also submit the request form to the CRW. The CRW will respond to and/or refer each request to the appropriate Department.

Please note: Request for Medical, Dental and Mental Health related services should be on the Health Care Request Form and not the CCDOC request form.

## Health Services

Cermak Health Services of Cook County, an affiliate of the Cook County Bureau of Health Services, provides on site medical, dental and mental health services. Hospitalization and specialized medical services are arranged with other Bureau affiliates (Stroger, Oak Forest and Provident Hospitals). Cermak Health Services will provide medical services for inmates on intake.

I___ ___e can fill out a Health Services Request Form to r___ ___st healthcare services. This form is available from the Cermak personnel or it can be found in the housing area on the wall mounted black painted container marked "Health Request Box." After the form is filled out it is to be put inside this container.

## Social Services

Correctional Rehabilitation Workers (CRWs) are available to aid in requests for information, process referrals and seek resolution of inmate complaints, grievances, and ongoing concerns. CRW's are assigned in each division and will provide information/services Monday thru Friday, excluding government holidays. They also act as the inmate's link with families, friends and other various outside agencies. CRWs may assist in arranging emergency phone calls. Pre-paid stamped envelopes may be given to indigent inmates when available. Issues regarding money, the release of personal property and documents requiring a inmate's signature will also be handled by the CRW.

## Law Library Services

All inmates housed in the CCDOC will have access to legal information related to their case(s). Law libraries located throughout the Department are made available for this purpose.

L__ ___ibrary Services are available twice daily, Monday t__ ___riday for researching criminal and civil matters. Law Library sessions will be, at minimum, one hour and a half. *Inmate Request Forms* must be utilized for accessing each session. Access requests will be limited to

one session per day, once per week. The request forms will be forwarded to the Law Library for scheduling.

    1. Inmates with court orders that stipulate Law Library access, and those inmates who act as their own attorney, will be allowed access according to the provisions of the court order.

    2. Inmates that have pending court dates; with the closest upcoming court date will be allowed access.

Photocopies and assistance with postage for legal mail is available to the inmate; however if the inmate is indigent these services will be provided without cost. Please see the Law Library personnel for guidelines and limitations.

## Religious Services

Religious volunteers provide spiritual guidance, bible studies, Holy Day observation programs and worship services for many denominations on a regular basis. In addition, chaplains provide individual counseling.

## Educational Programs

Eligible inmates from 17 to 21 years of age may enroll in the Chicago Public School/York Alternative High School. Inmates may work toward achieving a G.E.D. and/or classroom credits. This program is available to all inmates in every security classification. If more information is needed, please submit an *Inmate Request Form*. The CRW will refer all requests directly to the designated school representative.

Programmed Activities for Correctional Education (PACE) is a non-profit educational program available to inmates of any age. This program offers literacy education, volunteer tutorials and G.E.D. preparations. In addition, individual and group educational counseling is available. This program is not open to all inmates, more information can to obtain from the CRW.

City Colleges of Chicago provides G.E.D. preparation instruction to inmates 22 years of age and older. This program is not open to all inmates; more information can be obtained from the CRW.

## Substance Abuse Treatment

Inmates who desire to begin a treatment program for substance abuse should complete an *Inmate Request Form*. All requests will be forwarded to a Drug Unit Coordinator for review and consideration. Participation in this program is limited to space availability and security classification requirements.

## Sheriff's Female Furlough Program (SFFP)

SFFP combines the use of electronic monitoring devices and components of daytime programming to provide selected participants with a maximum level of supervision as well as the opportunity to participate in life skills programming.

## Administrative Mandatory Furlough (AMF)

When the AMF program is being utilized, inmates are automatically screened for eligibility. Inmates that meet eligibility requirements may be released on AMF. If incarceration or case information has changed after intake, inmates can submit a request for reconsideration.

Inmates have the right to appeal any decision of the Disciplinary Hearing Board by filing a written request with the Superintendent of the division in which the infraction took place. This appeal must be made within ten (10) ___ ing days from the date of being advised of the ___ ___ion.

The divisional Superintendent may affirm or reverse the decision outright, return the decision back to the Hearing Board for further proceedings, or modify, but not increase the sanction imposed. A decision will be made within five (5) days, and a written copy of the decision will be provided to the inmate. The inmate will sign and date, indicating he or she has received notification of the appeal decision.

**THE COOK COUNTY DEPARTMENT OF CORRECTIONS DOES NOT TOLERATE CRIMINAL ACTIVITIES OF ANY KIND. THE POSSESSION OF CONTRABAND, ASSAULTS AGIANST PERSONNEL OR OTHER INMATES, AND DAMAGE TO COUNTY PROPERTY WILL BE REFERRED TO THE COOK COUNTY STATE'S ATTORNEY FOR CRIMINAL PROSECUTION.**

**Contraband**
Items in your possession that have not been provided or approved by the CCDOC will be considered contraband, confiscated and a disciplinary report will be written.

**Discipline Categories and Penalties**
If you are found guilty of any of the acts listed below by a Disciplinary Hearing Board, you may receive one or more of the following penalties: loss of work assignment, loss of good time, loss of commissary privileges, loss of visitation ___ ___eges, increase in security classification, financial r___ ___ution, or any combination of the above. When the charge of "Damaging or Altering Government Property" is sustained, the Disciplinary Hearing Board may reduce or increase the infraction category/charge depending on the amount of restitution that is required. For all other infractions the Disciplinary Hearing Board may reduce the category/charge during their deliberations, however the category/charge may not be increased.

| Category | Penalties |
|---|---|
| I | Verbal Warning to 4 days in Disciplinary. Segregation. |
| II | 5 to 9 days in Disciplinary Segregation |
| III | 10 to 14 days in Disciplinary Segregation |
| IV | 15 to 19 days in Disciplinary Segregation |
| V | 20 to 24 days in Disciplinary Segregation |
| VI | 25 to 60 days in Disciplinary Segregation |

**CATEGORY I**
101 Possession of excess of clothing and/or bedding.
102 Failure to keep cell clean.
103 Tattooing/possession of tattooing instruments.
104 Littering.
105 Affixing items to walls, light fixtures or windows.
106 Wearing headbands or head coverings without authorization.
107 Violation of dress code.
   Storing drinks or foods other than those packaged foods purchased through commissary.
109 Failure to remain silent during inmate movement through the Department.
110 Verbally or physically demonstrating disrespect to personnel.
111 Possession of contraband.
112 Damaging or altering CCDOC property (restitution .01-50.00).

**CATEGORY II**
201 Use of obscene language to personnel and visitors.
202 Being in unauthorized area.
203 Presenting false information to sworn personnel.
204 Violation of safety or sanitation regulations.
205 Engaging in inappropriate physical contact.
206 Making sexual threats, proposals or gestures.
207 Committing any act that disrupts the orderly operation of the CCDOC.
208 Verbal threat to another person.
209 Possession of unauthorized medication.
210 Misuse of authorized medication.
211 Indecent exposure.
212 Possession and/or manufacture of unauthorized beverages (e.g. "hooch").
213 Possession of unauthorized monetary items (e.g. credit cards, money, checks, Etc).
214 Failure to stand for count or interfering with the taking of the count.
215 Violation of visiting regulations.
216 Violation of telephone or mail regulations.
217 Gambling.
218 Smoking.
219 Failure to comply with the Intake procedures.
220 Failure to follow the directions of Court Services Deputies while being moved to/from, or during judicial proceedings.
221 Possession of any tobacco or any tobacco related products (i.e. cigarette papers, lighters, matches, chewing tobacco, and any other related materials).
222 Damaging or altering CCDOC property (restitution 50.01-100.00).

**CATEGORY III**
300 Fighting.
301 Refusing an order to lock up.
302 Committing any act(s), which necessitates a security search by sworn personnel.
303 Damaging or altering CCDOC property (restitution 100.01-150.00).
304 Possession of stolen property.
305 Disobeying verbal or written orders from sworn personnel.
306 Sexual misconduct (voluntary).

**CATEGORY IV**
400 Possession of unauthorized clothing.
401 Committing any act that disrupts a judicial proceeding.
402 Throwing or projecting any item or substance.
403 Participating in any gang-related activity or communication.
404 Damaging or altering CCDOC property (restitution 150.01-200.00).

**CATEGORY V**
500 Theft.
501 Committing any act that requires sworn personnel to use force against an inmate.
502 Possession of counterfeit identification.
503 Committing any act that requires the use of force by Court Service Deputies while being moved to/from, or during a judicial proceeding.

504     Unauthorized possession of sworn personnel uniform(s) or equipment.
505     Damaging or altering CCDOC property (restitution 200.01-250.00).
506     Gang activity, participating in gang-related activity or communication.

## CATEGORY VI
600     Murder.
601     Assaulting any person.
602     Sexual abuse/assault.
603     Arson.
604     Possessing, manufacturing, introducing any weapon, ammunition, explosive caustic substance, dangerous chemicals, sharpened instruments or unauthorized tools, intoxicant, narcotic, paraphernalia, or drug not prescribed for the individual, or any other dangerous or deadly weapon or substance (e.g. homemade weapons or any sharp instrument such as scissors, fingernail files and all items identified as contraband.
605     Participating in riots.
606     Escape/escape attempt.
607     Battery.
608     Intimidation, extortion, blackmail, threats by words, action or other behavior.
609     Gang recruitment.
610     Attempting to commit any act listed in category VI, aiding and abetting any person in their commissions, planning to commit or soliciting to commit any offense will be considered the same commission as the act itself.
611     Participation in a disturbance requiring deployment of specialized units (i.e., K-9, ERT.).
612     Damaging or altering CCDOC property (restitution 250.01 and above).
613     Assault with a weapon on any person.

## Repeat Violations and Criminal Charges
Second or subsequent violations may be subject to the maximum number of days in the next highest category. Depending on the severity of the violation, criminal charges may be imposed pursuant to Illinois or Federal Law.

## Restitution
Inmates are held responsible for CCDOC property damaged or destroyed while in custody of the Sheriff of Cook County.
Inmates are required to pay for the repair; replacement and/or restoration of this property or any cost incurred by the Department (i.e. ambulance runs, overtime for sworn personnel, etc.) when it is determined by an official hearing board the inmate is responsible for the damages.

Upon a finding of GUILTY by the Disciplinary Hearing Board, the replacement cost of destroyed/damaged property and/or any cost incurred by the Department will be deducted from the inmate's trust account. In the event the funds in these accounts are not adequate to satisfy the replacement cost(s), an encumbrance will be placed on future monies received by the inmate until the financial obligation is satisfied.

Satisfaction of all claims will remain on file for seven (7) years, after the date of property destruction or damage. In the event an inmate is released (with an encumbrance and

subsequently re-incarcerated, required payment of the debt will remain active until satisfied).

## Grievances Guidelines
Inmates housed in the CCDOC may initiate written grievances regarding circumstance or action, which he/s feels may be discriminatory, oppressive or unjust. The following reasons are to be used as guidelines when determining when to file a grievance:

1.      Alleged violations of civil, constitutional or statutory rights.
2.      Alleged criminal or prohibited acts by personnel.
3.      Alleged violation of Department policy regarding the inmate's general welfare or safety.
4.      To resolve concerns within the facility that creates unsafe or unsanitary living conditions.
5.      To resolve issues related to an inmate's money, property, education and medical needs.

*Inmate Grievance Forms* will be available in all housing units. When forms are unavailable, grievances can be submitted on plain paper. Upon completion of the *Inmate Grievance Form*, sworn personnel will collect inmate grievances, Monday through Friday, in sealed grievance envelopes. These sealed envelopes will be delivered to the CRW in the respective division.

An independent appeal panel will review the inmate's appeal of the grievance findings.

1.      If an inmate wishes to appeal the grievance decision, he/she may seek review directly from the Appeal Panel within fourteen (14) days of his/her receipt of the decision. Such requests for appeal should be made by contacting the CRW or by forwarding the request to the sworn personnel during the grievance collection process.
2.      The Appeal Panel will investigate each grievance as well as review the inmate's basis for an appeal. The Appeal Panel will accept or deny the appeal request and notate a response. If the appeal request is declined, the grievance process for the stated issue is completed. If the appeal request is accepted, the recommendation will be forwarded to the Executive Director/Designee for approval, denial and/or action. The Appeal Board's response will be forwarded to the inmate within 10 days of the appeal review date.

It should be noted that grievances cannot be initiated regarding findings of the Disciplinary Hearing Board, including restitution amounts. An appeal of the Board's findings regarding imposed discipline will be made directly to the division Superintendent/Designee. All administrative decisions that effect the inmate's rights and welfare can be grieved, with the exception of Disciplinary Hearing Board decisions.

Please be reminded and assured that when the grievance is received in a sealed envelope during the collection process, the procedure is confidential, and the only authorized person to receive, process and forward the grievance is the CRW assigned to the division where the inmate is housed.

# STATE OF ILLINOIS

## ILLINOIS CODE OF CRIMINAL PROCEDURE - 725 ILCS 5/

### JAIL AND DETENTION STANDARDS

# NOTICE OF RIGHTS OF PERSONS UNDER ARREST

## DEPARTMENT OF CORRECTIONS

**ARTICLE 103. RIGHTS OF ACCUSED - Sec. 103-2. - Treatment while in custody.**

(a) On being taken into custody every person shall have the right to remain silent.

(b) No unlawful means of any kind shall be used to obtain a statement, admission or confession from any person in custody.

(c) Persons in custody shall be treated humanely and provided with proper food, shelter and, if required, medical treatment.

*(Source: Laws 1963, p. 2836.)*

**Sec. 103-3. - Right to communicate with attorney and family; transfers.**

Persons who are arrested shall have the right to communicate with an attorney of their choice and a member of their family by making a reasonable number of telephone calls or in any other reasonable manner. Such communication shall be permitted within a reasonable time after arrival at the first place of custody.

In the event the accused is transferred to a new place of custody his right to communicate with an attorney and a member of his family is renewed.

*(Source: Laws 1963, p. 2836.)*

**Sec. 103-4. - Right to consult with attorney.**

Any person committed, imprisoned or restrained of his liberty for any cause whatever and whether or not such person is charged with an offense shall, except in cases of imminent danger of escape, be allowed to consult with any licensed attorney at law of this State whom such person may desire to see or consult, alone and in private at the place of custody, as many times and for such period each time as is reasonable. When any such person is about to be moved beyond the limits of this State under any pretense whatever the person to be moved shall be entitled to a reasonable delay for the purpose of obtaining counsel and of availing himself of the laws of this State for the security of personal liberty.

*(Source: Laws 1963, p. 2836.)*

**ARTICLE 109. - PRELIMINARY EXAMINATION - Sec. 109-1. Person arrested.**

(a) A person arrested with or without a warrant shall be taken, without unnecessary delay before the nearest and most accessible judge in that county, except when such county is a participant in a regional jail authority, in which event such person may be taken to the nearest and most accessible judge, irrespective of the county where such judge presides, and a charge shall be filed. Whenever a person arrested either with or without a warrant is required to be taken before a judge, a charge may be filed against such person by way of a two-way closed circuit television system, except that a hearing to deny bail to the defendant may not be conducted by way of closed circuit television.

(b) The judge shall:

(1) Inform the defendant of the charge against him and shall provide him with a copy of the charge.

(2) Advise the defendant of his right to counsel and if indigent shall appoint a public defender or licensed attorney at law of this State to represent him in accordance with the provisions of Section 113-3 of this Code.

(3) Schedule a preliminary hearing in appropriate cases; and

(4) Admit the defendant to bail in accordance with the provisions of Article 110 of this Code.

(c) The court may issue an order of protection in accordance with the provisions of Article 112A of this Code.

*(Source: P.A. 90-140, eff. 1-1-98.)*

**ARTICLE 110. BAIL - Sec. 110-2. - Release on own recognizance.**

When from all the circumstances the court is of the opinion that the defendant will appear as required either before or after conviction and the defendant will not pose a danger to any person or the community and that the defendant will comply with all conditions of bond, which shall include the defendant's current address with a written admonishment to the defendant that he or she must comply with the provisions of Section 110-12 of this Code regarding any change in his or her address, the defendant may be released on his or her own recognizance. The defendant's address shall at all times remain a matter of public record with the clerk of the court. A failure to appear as required by such recognizance shall constitute an offense subject to the penalty provided in Section 32-10 of the "Criminal Code of 1961", approved July 28, 1961, as heretofore and hereafter amended, for violation of the bail bond, and any obligated sum fixed in the recognizance shall be forfeited and collected in accordance with subsection (g) of Section 110-7 of this Code.

This Section shall be liberally construed to effectuate the purpose of relying upon contempt of court proceedings or criminal sanctions instead of financial loss to assure the appearance of the defendant, and that the defendant will not pose a danger to any person or the community and that the defendant will comply with all conditions of bond. Monetary bail should be set only when it is determ      that no other conditions of release will reasonably assure the defend

community and th      e defendant will comply with all conditions of bond.

## Sec. 110-4. Jailable Offenses.

(a) All persons shall be bailable before conviction, except the following offenses where the proof is evident or the presumption great that the defendant is guilty of the offense: capital offenses; offenses for which a sentence of life imprisonment may be imposed as a consequence of conviction; felony offenses for which a sentence of imprisonment, without conditional and revocable release, shall be imposed by law as a consequence of conviction, where the court after a hearing, determines that the release of the defendant would pose a real and present threat to the physical safety of any person or persons; stalking or aggravated stalking, where the court, after a hearing, determines that the release of the defendant would pose a real and present threat to the physical safety of the alleged victim of the offense and denial of bail is necessary to prevent fulfillment of the threat upon which the charge is based; or unlawful use of weapons in violation of item (4) of subsection (a) of Section 24-1 of the Criminal Code of 1961 when that offense occurred in a school or in any conveyance owned, leased, or contracted by a school to transport students to or from school or a school-related activity, or on any public way within 1,000 feet of real property comprising any school, where the court, after a hearing, determines that the release of the defendant would pose a real and present threat to the physical safety of any person and denial of bail is necessary to prevent fulfillment of that threat.

(b) A person seeking release on bail who is charged with a capital offense or an offense for which a sentence of life imprisonment may be imposed shall not be bailable until a hearing is held wherein such person has the burden of demonstrating that the proof of his guilt is not evident and the presumption is not great.

(c) Where it is alleged that bail should be denied to a person upon the grounds that the person presents a real and present threat to the physical safety of any person or persons, the burden of proof of such allegations shall be upon the State.

(d) When it is alleged that bail should be denied to a person charged with stalking or aggravated stalking upon the grounds set forth in Section 110-6.3 of this Code, the burden of proof of those allegations shall be upon the State.

(Source: P.A. 5-11, eff. 6-4-99.)

## Sec. 110-7. - Deposit of Bail Security.

The person for whom bail has been set shall execute the bail bond and deposit with the clerk of the court before which the proceeding is pending a sum of money equal to 10% of the bail, but in no event shall such deposit be less than $25. The clerk of the court shall provide a space on each form for a person other than the accused who has provided the money for the posting of bail to so indicate and a space signed by an accused who has executed the bail bond indicating whether a person other than the accused has provided the money for the posting of bail. The form shall also include a written notice to such person who has provided the defendant with the money for the posting of bail indicating that the bail may be used to pay costs, attorney's fees, fines, or other purposes authorized by the court and if the defendant fails to comply with the conditions of the bail bond, the court shall enter an order declaring the bail to be forfeited. The written notice must be: (1) distinguishable from the surrounding text; (2) in bold type or underscored; and (3) in a type size at least 2 points larger than the surrounding type. When a person for whom bail has been set is charged with an offense under the "Illinois Controlled Substances Act" which is a Class X felony, the court may require the defendant to deposit a sum equal to 100% of the bail. Where any person is charged with a forcible felony while free on bail and is the subject of proceedings under Section 109-3 of this Code the judge conducting the preliminary examination may also conduct a hearing upon the application of the State pursuant to the provisions of Section 110-6 of this Code to increase or revoke the bail for that person's prior alleged offense.

(b) Upon depositing this sum and any bond fee authorized by law, the person shall be released from custody subject to the conditions of the bail bond.

## ARTICLE 113. ARRAIGNMENT - Sec. 113-3. - Counsel and Expert Witness

(a) Every person charged with an offense shall be allowed counsel before pleading to the charge. If the defendant desires counsel and has been unable to obtain same before arraignment the court shall recess court or continue the cause for a reasonable time to permit defendant to obtain counsel and consult with him before pleading to the charge. If the accused is a dissolved corporation, and is not represented by counsel, the court may, in the interest of justice, appoint as counsel a licensed attorney of this State.

(b) In all cases, except where the penalty is a fine only, if the court determines that the defendant is indigent and desires counsel, the Public Defender shall be appointed as counsel. If there is no Public Defender in the county or if the defendant requests counsel other than the Public Defender and the court finds that the rights of the defendant will be prejudiced by the appointment of the Public Defender, the court shall appoint as counsel a licensed attorney at law of this State, except that in a county having a population of 2,000,000 or more the Public Defender shall be appointed as counsel in all misdemeanor cases where the defendant is indigent and desires counsel unless the case involves multiple defendants, in which case the court may appoint counsel other than the Public Defender for the additional defendants. The court shall require an affidavit signed by any defendant who requests court-appointed counsel. Such affidavit shall be in the form established by the Supreme Court containing sufficient information to ascertain the assets and liabilities of that defendant. The Court may direct the Clerk of the Circuit Court to assist the defendant in the completion of the affidavit. Any person who knowingly files such affidavit containing false information shall be guilty of a Class B misdemeanor. The court shall determine the assets and liabilities of the defendant, including any real or personal property or other assets owned and his or her liabilities thereon; any money in the possession of the defendant in any checking or savings account including any money on deposit in any financial institution in any sole proprietorship or in any safety deposit box any other assets and liabilities shall be liable to the county where the case is pending for the reasonable value of the services rendered by the public defender or other court-appointed counsel in the case to the extent that such services were unjustly or falsely procured.

(Source: P.A. 91-589, eff. 1-1-00.)

# EXHIBIT 2

# Cook County Department Of Corrections



# Rules and Regulations For Detainees

**Effective: July 2007**

## Orientation

Upon arrival to the Cook County Department of Corrections (CCDOC), each inmate will receive a written copy of the rules and regulations and an oral explanation of them. The CCDOC will also provide a written copy of the rules and regulations in any language used by a significant portion of the Department's inmate population.

A copy of the rules and regulations will also be posted in inmate areas throughout the CCDOC.

## General Rules

1. Inmates must lock up immediately when so ordered.
2. Inmates must be fully clothed when outside their cells.
3. Inmates may not wear or display any type of gang sign or symbol.
4. Inmates must sweep cells, make beds, and remove garbage from cells before each morning inspection.
5. Inmates must wet mop cells at least every other day before morning inspection.
6. Inmates may not attach objects to cell, living area walls, doors, windows, or lights. Doorways must be free from obstruction.
7. Inmates may not display nude pictures or photographs.
8. Privileges begin when living unit and cells pass morning inspections.
9. Inmates will be held responsible for all damage to CCDOC property.
10. Inmates must keep dayroom area clean.
11. Inmates must have permission to enter the exercise area or multipurpose room.
12. Inmates may enter the visiting booth only when they have a visit.
13. Inmates will not be loud, boisterous or disruptive.
14. Inmates must comply with orders and directions given by correctional personnel.
15. Inmates will remain silent when moved throughout the Department.
16. Inmates will not sit on stairs or tables in the living areas.
17. Inmates are required to maintain a level of personal hygiene consistent with group living.
18. Inmates will use the dayroom in accordance with the Living Unit Rotation Schedule.

## Rights and Responsibilities of CCDOC Inmates

1. Expect that as a human being all personnel will treat you respectfully, impartially and fairly.
2. Be informed of the rules and schedules concerning the operation of the Department.
3. Freedom of religious affiliation and voluntary religious worship.
4. Health care which includes nutritious meals, the opportunity to shower regularly, proper ventilation, a regular exercise period, toilet articles, medical and dental treatment.
5. Confidential access to the courts.
6. The right to consult with legal counsel by mail, telephone or personal interview.
7. Participate in the use of the law library reference materials to assist in resolving legal problems. Right to receive help when it is available at the law library.
8. Clean and sanitary living conditions.

## Prevention/Self Protection from Sexual Abuse/Attack

You may avoid an attack by keeping the following safety guidelines in mind.

1. Position yourself in "Safe Zones" areas where you can see personnel and personnel can see you. If you are being pressured for sex, report it to any personnel immediately.
2. Be aware of situations that make you feel uncomfortable. Trust your instincts. **IF IT FEELS WRONG, LEAVE, GET HELP, OR CALL OUT FOR PERSONNEL.**
3. Don't let your manners or pride get in the way of keeping yourself safe. Don't be afraid to say "NO" or "STOP IT NOW."
4. Walk and stand with confidence. Many predators choose victims who look like they won't fight back or are emotionally weak.

## Reporting Sexual Abuse/Assault

Get to a safe place. **REPORT THE ATTACK TO PERSONNEL IMMEDIATELY.** The longer you wait, the more difficult it is to obtain the evidence necessary for a criminal and/or an administrative investigation. Request immediate medical attention; you may have serious injuries that you are not aware of, and any sexual contact can expose you to sexually transmitted diseases. Do not shower, brush your teeth if the (abuse/assault was oral), use the restroom, or change your clothes. You may destroy important evidence.

## Treatment and Counseling for Sexual Abuse/Assault Victims

Victims of sexual abuse/assault shall be given evaluations and treatment by medical personnel for any injuries inflicted by the abuse/assault. Victims may also receive counseling by psychiatric personnel.

## Disciplinary Procedures

Any inmate charged with the commission of any act(s), where an inmate may be subject to disciplinary segregation, is entitled to the due process procedures. Inmates will receive a copy of the four-part Disciplinary Report form stating the specific prohibited act(s) they are charged with and a brief statement of facts. Inmates will be entitled to a hearing and decision within seven (7) days excluding weekends and holidays. When an inmate is placed in disciplinary segregation before a disciplinary hearing is conducted, the Disciplinary Hearing Board will ensure that a hearing is completed within 72 hours, including weekends and holidays. The Executive Director/designee may place an inmate under "administrative lock-up" pending a disciplinary hearing or further instructions. Any time spent in pre-hearing segregation will be credited against any subsequent disciplinary detention imposed.

An inmate charged with a rule violation will have the opportunity (but is not required) to be present, make a statement, present documentary evidence and call witnesses on his or her behalf when such witnesses are reasonably available and their presence is not deemed by the Hearing Board to be unduly hazardous to Departmental safety. The Disciplinary Hearing Board is empowered to impose appropriate sanctions when a charge is substantiated by information obtained in the hearing process.

inmates have the right to appeal any decision of the Disciplinary Hearing Board by filing a written request with the Superintendent of the division in which the infraction took place. This appeal must be made within ten (10) working days from the date of being advised of the decision.

The divisional Superintendent may affirm or reverse the decision outright, return the decision back to the Hearing Board for further proceedings, or modify, but not increase the sanction imposed. A decision will be made within five (5) days, and a written copy of the decision will be provided to the inmate. The inmate will sign and date, indicating he or she has received notification of the appeal decision.

**THE COOK COUNTY DEPARTMENT OF CORRECTIONS DOES NOT TOLERATE CRIMINAL ACTIVITIES OF ANY KIND. THE POSSESSION OF CONTRABAND, ASSAULTS AGIANST PERSONNEL OR OTHER INMATES, AND DAMAGE TO COUNTY PROPERTY WILL BE REFERRED TO THE COOK COUNTY STATE'S ATTORNEY FOR CRIMINAL PROSECUTION.**

**Contraband**
Items in your possession that have not been provided or approved by the CCDOC will be considered contraband, confiscated and a disciplinary report will be written.

**Discipline Categories and Penalties**
If you are found guilty of any of the acts listed below by a Disciplinary Hearing Board, you may receive one or more of the following penalties: loss of work assignment, loss of good time, loss of commissary privileges, loss of visitation privileges, increase in security classification, financial restitution, or any combination of the above. When the charge of "Damaging or Altering Government Property" is sustained, the Disciplinary Hearing Board may reduce or increase the infraction category/charge depending on the amount of restitution that is required. For all other infractions the Disciplinary Hearing Board may reduce the category/charge during their deliberations, however the category/charge may not be increased.

| Category | Penalties |
|---|---|
| I | **Verbal Warning to 4 days in Disciplinary. Segregation.** |
| II | **5 to 9 days in Disciplinary Segregation** |
| III | **10 to 14 days in Disciplinary Segregation** |
| IV | **15 to 19 days in Disciplinary Segregation** |
| V | **20 to 24 days in Disciplinary Segregation** |
| VI | **25 to 60 days in Disciplinary Segregation** |

**CATEGORY I**
101  Possession of excess of clothing and/or bedding.
102  Failure to keep cell clean.
103  Tattooing/possession of tattooing instruments.
104  Littering.
105  Affixing items to walls, light fixtures or windows.
106  Wearing headbands or head coverings without authorization.
107  Violation of dress code.
108  Storing drinks or foods other than those packaged foods purchased through commissary.
109  Failure to remain silent during inmate movement through the Department.
110  Verbally or physically demonstrating disrespect to personnel.
111  Possession of contraband.
112  Damaging or altering CCDOC property (restitution .01-50.00).

**CATEGORY II**
201  Use of obscene language to personnel and visitors.
202  Being in unauthorized area.
203  Presenting false information to sworn personnel.
204  Violation of safety or sanitation regulations.
205  Engaging in inappropriate physical contact.
206  Making sexual threats, proposals or gestures.
207  Committing any act that disrupts the orderly operation of the CCDOC.
208  Verbal threat to another person.
209  Possession of unauthorized medication.
210  Misuse of authorized medication.
211  Indecent exposure.
212  Possession and/or manufacture of unauthorized beverages (e.g. "hooch").
213  Possession of unauthorized monetary items (e.g. credit cards, money, checks, Etc).
214  Failure to stand for count or interfering with the taking of the count.
215  Violation of visiting regulations.
216  Violation of telephone or mail regulations.
217  Gambling.
218  Smoking.
219  Failure to comply with the Intake procedures.
220  Failure to follow the directions of Court Services Deputies while being moved to/from, or during judicial proceedings.
221  Possession of any tobacco or any tobacco related products (i.e. cigarette papers, lighters, matches, chewing tobacco, and any other related materials).
222  Damaging or altering CCDOC property (restitution 50.01-100.00).

**CATEGORY III**
300  Fighting.
301  Refusing an order to lock up.
302  Committing any act(s), which necessitates a security search by sworn personnel.
303  Damaging or altering CCDOC property (restitution 100.01-150.00).
304  Possession of stolen property.
305  Disobeying verbal or written orders from sworn personnel.
306  Sexual misconduct (voluntary).

**CATEGORY IV**
400  Possession of unauthorized clothing.
401  Committing any act that disrupts a judicial proceeding.
402  Throwing or projecting any item or substance.
403  Participating in any gang-related activity or communication.
404  Damaging or altering CCDOC property (restitution 150.01-200.00).

**CATEGORY V**
500  Theft.
501  Committing any act that requires sworn personnel to use force against an inmate.
502  Possession of counterfeit identification.
503  Committing any act that requires the use of force by Court Service Deputies while being moved to/from, or during a judicial proceeding.

504 Unauthorized possession of sworn personnel uniform(s) or equipment.
505 Damaging or altering CCDOC property (restitution 200.01-250.00).
505 Gang activity, participating in gang-related activity or communication.

## CATEGORY VI

600 Murder.
601 Assaulting any person.
602 Sexual abuse/assault.
603 Arson.
604 Possessing, manufacturing, introducing any weapon, ammunition, explosive caustic substance, dangerous chemicals, sharpened instruments or unauthorized tools, intoxicant, narcotic, paraphernalia, or drug not prescribed for the individual, or any other dangerous or deadly weapon or substance (e.g. homemade weapons or any sharp instrument such as scissors, fingernail files and all items identified as contraband.
605 Participating in riots.
606 Escape/escape attempt.
607 Battery.
608 Intimidation, extortion, blackmail, threats by words, action or other behavior.
609 Gang recruitment.
610 Attempting to commit any act listed in category VI, aiding and abetting any person in their commissions, planning to commit or soliciting to commit any offense will be considered the same commission as the act itself.
611 Participation in a disturbance requiring deployment of specialized units (i.e., K-9, ERT.). Damaging or altering CCDOC property (restitution 250.01 and above).
613 Assault with a weapon on any person.

## Repeat Violations and Criminal Charges

Second or subsequent violations may be subject to the maximum number of days in the next highest category. Depending on the severity of the violation, criminal charges may be imposed pursuant to Illinois or Federal Law.

## Restitution

Inmates are held responsible for CCDOC property damaged or destroyed while in custody of the Sheriff of Cook County.
Inmates are required to pay for the repair; replacement and/or restoration of this property or any cost incurred by the Department (i.e. ambulance runs, overtime for sworn personnel, etc.) when it is determined by an official hearing board the inmate is responsible for the damages.

Upon a finding of GUILTY by the Disciplinary Hearing Board, the replacement cost of destroyed/damaged property and/or any cost incurred by the Department will be deducted from the inmate's trust account. In the event the funds in these accounts are not adequate to satisfy the replacement cost(s), an encumbrance will be placed on future monies received by the inmate until the financial obligation is satisfied.

Satisfaction of all claims will remain on file for seven (7) years, after the date of property destruction or damage. In the event an inmate is released (with an encumbrance and

subsequently re-incarcerated, required payment of the debt will remain active until satisfied).

## Grievances Guidelines

Inmates housed in the CCDOC may initiate written grievances regarding circumstance or action, which he/she feels may be discriminatory, oppressive or unjust. The following reasons are to be used as guidelines when determining when to file a grievance:

1. Alleged violations of civil, constitutional or statutory rights.
2. Alleged criminal or prohibited acts by personnel.
3. Alleged violation of Department policy regarding the inmate's general welfare or safety.
4. To resolve concerns within the facility that creates unsafe or unsanitary living conditions.
5. To resolve issues related to an inmate's money, property, education and medical needs.

*Inmate Grievance Forms* will be available in all housing units. When forms are unavailable, grievances can be submitted on plain paper. Upon completion of the *Inmate Grievance Form*, sworn personnel will collect inmate grievances, Monday through Friday, in sealed grievance envelopes. These sealed envelopes will be delivered to the CRW in the respective division.

An independent appeal panel will review the inmate's appeal of the grievance findings.

1. If an inmate wishes to appeal the grievance decision, he/she may seek review directly from the Appeal Panel within fourteen (14) days of his/her receipt of the decision. Such requests for appeal should be made by contacting the CRW or by forwarding the request to the sworn personnel during the grievance collection process.
2. The Appeal Panel will investigate each grievance as well as review the inmate's basis for an appeal. The Appeal Panel will accept or deny the appeal request and notate a response. If the appeal request is declined, the grievance process for the stated issue is completed. If the appeal request is accepted, the recommendation will be forwarded to the Executive Director/Designee for approval, denial and/or action. The Appeal Board's response will be forwarded to the inmate within 10 days of the appeal review date.

It should be noted that grievances cannot be initiated regarding findings of the Disciplinary Hearing Board, including restitution amounts. An appeal of the Board's findings regarding imposed discipline will be made directly to the division Superintendent/Designee. All administrative decisions that effect the inmate's rights and welfare can be grieved, with the exception of Disciplinary Hearing Board decisions.

Please be reminded and assured that when the grievance is received in a sealed envelope during the collection process, the procedure is confidential, and the only authorized person to receive, process and forward the grievance is the CRW assigned to the division where the inmate is housed.

*Emergency Grievances* are those involving an immediate threat to the welfare or safety of an inmate. All emergency grievances placed in a sealed envelope must be clearly labeled **"EMERGENCY GRIEVANCE"**. The Correctional Officer assigned to the living unit will contact a Supervisor/Shift Commander who will deliver the grievance to a CRW for review and processing.

## Program, Services and Information "Request" Procedure

The programs and services described below are available to all inmate of the CCDOC, except where indicated. In most instances a *Inmate Request Form* indicating a request for information or to participate in these programs should be filled out by the inmate and given to the Correctional Officer assigned to the living unit. The inmate may also submit the request form to the CRW. The CRW will respond to and/or refer request to the appropriate Department.

Please note: Request for Medical, Dental and Mental Health related services should be on the Health Care Request Form and not the CCDOC request form.

## Health Services

Cermak Health Services of Cook County, an affiliate of the Cook County Bureau of Health Services, provides on site medical, dental and mental health services. Hospitalization and specialized medical services are arranged with other Bureau affiliates (Stroger, Oak Forest and Provident Hospitals). Cermak Health Services will provide medical services for inmates on intake.

Inmate can fill out a Health Services Request Form to request healthcare services. This form is available from the Cermak personnel or it can be found in the housing area on the wall mounted black painted container marked "Health Request Box." After the form is filled out it is to be put inside this container.

## Social Services

Correctional Rehabilitation Workers (CRWs) are available to aid in requests for information, process referrals and seek resolution of inmate complaints, grievances, and ongoing concerns. CRW's are assigned in each division and will provide information/services Monday thru Friday, excluding government holidays. They also act as the inmate's link with families, friends and other various outside agencies. CRWs may assist in arranging emergency phone calls. Pre-paid stamped envelopes may be given to indigent inmates when available. Issues regarding money, the release of personal property and documents requiring a inmate's signature will also be handled by the CRW.

## Law Library Services

All inmates housed in the CCDOC will have access to legal information related to their case(s). Law libraries located throughout the Department are made available for this purpose.

Law Library Services are available twice daily, Monday thru Friday for researching criminal and civil matters. Law Library sessions will be, at minimum, one hour and a half. *Inmate Request Forms* must be utilized for accessing each session. Access requests will be limited to

one session per day, once per week. The request forms will be forwarded to the Law Library for scheduling.

1. Inmates with court orders that stipulate Law Library access, and those inmates who act as their own attorney, will be allowed access according to the provisions of the court order.
2. Inmates that have pending court dates; with the closest upcoming court date will be allowed access.

Photocopies and assistance with postage for legal mail is available to the inmate; however if the inmate is indigent these services will be provided without cost. Please see the Law Library personnel for guidelines and limitations.

## Religious Services

Religious volunteers provide spiritual guidance, bible studies, Holy Day observation programs and worship services for many denominations on a regular basis. In addition, chaplains provide individual counseling.

## Educational Programs

Eligible inmates from 17 to 21 years of age may enroll in the Chicago Public School/York Alternative High School. Inmates may work toward achieving a G.E.D. and/or classroom credits. This program is available to all inmates in every security classification. If more information is needed, please submit an *Inmate Request Form*. The CRW will refer all requests directly to the designated school representative.

Programmed Activities for Correctional Education (PACE) is a non-profit educational program available to inmates of any age. This program offers literacy education, volunteer tutorials and G.E.D. preparations. In addition, individual and group educational counseling is available. This program is not open to all inmates, more information can to obtain from the CRW.

City Colleges of Chicago provides G.E.D. preparation instruction to inmates 22 years of age and older. This program is not open to all inmates; more information can be obtained from the CRW.

## Substance Abuse Treatment

Inmates who desire to begin a treatment program for substance abuse should complete an *Inmate Request Form*. All requests will be forwarded to a Drug Unit Coordinator for review and consideration. Participation in this program is limited to space availability and security classification requirements.

## Sheriff's Female Furlough Program (SFFP)

SFFP combines the use of electronic monitoring devices and components of daytime programming to provide selected participants with a maximum level of supervision as well as the opportunity to participate in life skills programming.

## Administrative Mandatory Furlough (AMF)

When the AMF program is being utilized, inmates are automatically screened for eligibility. Inmates that meet eligibility requirements may be released on AMF. If incarceration or case information has changed after intake, inmates can submit a request for reconsideration.

The CRW will forward this request to the Classification Department for review and consideration.

## Electronic Monitoring (EM)

Upon entry into the CCDOC, all inmates are automatically screened for eligibility. Inmates that meet eligibility requirements may be release on EM. If incarceration or case information has changed after intake, inmates can submit a request for reconsideration. The CRW will forward this request to DCSI for review and/or response.

## Department of Community Intervention and Supervision (DCSI)/Day Reporting

Inmates participating in the EM program are automatically screened for eligibility. Inmates that meet requirements may be released on Day Reporting.

## Chicago Legal Aid to Incarcerated Mothers (CLAIM)

A non-profit agency that provides free legal services to incarcerated mothers to help benefit their children and families.

## My Sister's Keeper

A complete after-care program that assists women who have been recently released from the correctional system in the following areas: educational referral, shelter care, self-esteem and family/individual counseling.

## Veterans Assistance

A representative from the Veterans Administration is available to provide information and assistance to inmates regarding healthcare, housing, education and many ongoing basic needs.

## ral Library

Facilities for general reading and participation in the Clarence Darrow Art Program are available to inmates. For additional information, please submit an *Inmate Request Form* to the CRW.

## Marriages

Inmates may get married while in CCDOC custody. A presiding judge from the Criminal Courts will establish the marriage date(s) and notify the CCDOC and inmates accordingly. CCDOC Program Services personnel will assist the inmate and fiancé with procedural information and required documentation. Additional information can be obtained by submitting an *Inmate Request Form* to the CRW.

## Voter Registration and Absentee Balloting

Pre-trial inmates who are residents of Cook County will be able to register to vote and cast absentee ballots in elections while they are incarcerated. The Chicago Board of Elections and/or the Cook County Board of Elections will make eligibility requirements available. All elections are held under the supervision of a representative of the Board of Election Commissioners.

## Minors

Individuals who are under the age of 17 and incarcerated in the CCDOC should immediately notify sworn personnel or the CRW. The CCDOC will begin an age cation and/or custody transfer process.

## Personal Hygiene

All inmates are expected to maintain personal body cleanliness. Showers are located in the housing areas for inmate use. Upon intake, inmates will be issued a uniform, soap, toothpaste, toothbrush and linens. Personal care and hygiene items are available through the commissary.

## Laundry

Inmates will be given the opportunity to exchange linen and uniforms on a weekly basis.

## Barber/Beauty Shop

All inmates have routine access to barber/beauty shop services that are provided and scheduled in each division.

## Meals

The CCDOC serves three (3) meals a day. Special diets may be approved upon written request, and are available.

## Commissary

Sells a variety of food and personal hygiene products to inmates that have unencumbered funds in their trust account. Commissary is available weekly according to schedules posted in each division. The weekly spending limit is $100.00. The Executive Director/designee will determine adjustments to this amount.

## Trust Department

Holds funds for inmates while they are incarcerated at the CCDOC. Any money in the possession of the inmate when they enter the CCDOC is deposited in an account bearing the name and identification number of the inmate. After arrival, the only authorized means of receiving funds from the outside is in the form of money orders, cashier's check and certified checks, and must be sent by mail. Personal checks are **not accepted.** All money orders, etc., must bear the inmate's name and identification number and not exceed $100.00 at any one (1) time. Ten (10) business days are required before these funds can be used for any purpose other than commissary. Western Union and Money Gram can be utilized to transfer funds to the CCDOC. Please contact the CRW for information.

## Mail

Inmates will be permitted to receive mail while incarcerated, provided that, at the time of admission to the Department, each inmate had given their consent for designated CCDOC personnel to open and inspect incoming mail in accordance with CCDOC regulations and relevant laws. If an inmate does not give their consent to such inspection, all mail addressed to the individual will be returned to the Post Office unopened and marked "Refused". Outgoing mail may be opened, read or censored. Any incoming mail that does not clearly identify the addressee (including the complete and correct inmate number) will be returned. All incoming and outgoing mail must have complete information from sender and addressee.

Outgoing mail should have the following information in the return address corner:

Inmate's Name _____ ID # _____
Division_____ Wing/Cell_____
P.O. Box 089002
Chicago, Illinois 60608

Incoming mail should have the following information:

Sender's Full Name
Sender's Full Address
Sender's Zip Code.

Inmates Name _____ ID # _____
Division _____ Wing/Cell _____
P.O. Box 089002
Chicago, Illinois 60608

## Telephones

Telephones are located in living units. Inmates will share the use of telephones in the living unit. Telephones will not accept incoming calls. Telephone privileges will begin after the living unit passes daily inspection. Inmates are permitted to use the telephone whenever they are in the dayroom. Outgoing telephone calls will be billed as collect calls. If the person being called accepts the call, they will be charged for the call. Telephone calls will have a time frame being a minimum of five (5) minutes and a maximum of fifteen (15) minutes per call. After 15 minutes, the call will be cut off by the telephone system. Abuse or illegal use of the telephone privileges may result in the loss of privileges, disciplinary action or criminal charges.

## Personal Property

At discharge the inmate shall present himself or herself to the Property Office with valid picture identification. The Property Office remains open 24 hours a day. No money can be given without picture identification. Release of funds cannot be processed until the Commissary Department confirms all payments have been cleared. No cash payouts will be made. Checks will be issued for remaining account balances. Upon the request of an inmate, CRW's will assist in the release of money to another individual or agency. The receiving party must have picture identification and the inmate's property receipt. Items on receipt will be stored for a maximum of ninety (90) days from the discharge date. All property not returned to the inmate or released to another individual within the ninety (90) days from the discharge date will be disposed of. Upon the request of the inmate, CRW's will assist in the release of personal property to another individual or agency. The inmate will sign a release form identifying the name and address of the person authorized to receive the property. The receiving party must have picture identification.

## Bonding Office

The Bond Office is open from **9:00 a.m. – 9:00 p.m.**, three hundred and sixty-five (365) days per year and accepts payment by cash, cashier's check, certified checks or credit card. The bond clerk must verify cashier and certified checks with the bank. Checks are to be made payable to: **Clerk of the Circuit Court**. Credit Cards will be accepted in accordance with the guidelines set by the Circuit Court of Cook County.

## Internal Investigations

Internal Affairs Department (IAD) will investigate any threat of harm committed against inmates, or CCDOC personnel or any criminal offenses, disturbances or threats to the order and welfare of the CCDOC thoroughly and confidentially.

## Fire Drills

Fire drills are conducted periodically. Inmates are expected to move promptly in an orderly fashion during such drills and to follow the directives of sworn personnel. In the event of a Department evacuation or emergency, follow all directions by sworn personnel while maintaining silence and order. Exit signs are located throughout the Department to assist in the evacuation of personnel and inmates during an emergency.

## Family Contact Information

Inmate's next of kin or other designated individual(s) shall be notified in case of death or serious illness. This information shall be obtained from the inmate at the time of admission and maintained in the inmate's central file.

## Wake Orders

Wake Orders for inmates will be executed according to Departmental policy and procedures. Any costs incurred by the Department for the wake order may be deducted from the inmate's Trust Account. If the inmate is indigent the costs may be deducted from the Inmate Welfare Fund.

## Visitation

All persons entering or exiting the CCDOC will be required to produce one (1) valid government picture identification which will include: Driver's License, State Identification card, Passport, etc. If a government ID in not available, a combination of the following are acceptable: Public Aid card accompanied by Medical card and/or Voter's Registration card. No one under the age of 17 years of age will be allowed to enter unless accompanied by an adult. All bags and containers will be searched for contraband before the visitor is permitted to enter the CCDOC. All visitors will be subject to search under existing Departmental guidelines.

**Any visitor attempting to introduce contraband into the CCDOC will be subject to criminal prosecution under existing Illinois Compiled Statues Code 720.ILCS 5/31 A.1.**

For inmate information regarding the visitation schedule and visitation procedures, please call **1-773-869-5245.**

## Department Location

The Cook County Department of Corrections is accessible by several bus lines operated by the Chicago Transit Authority. Persons interested in transportation information and/or directions to the CCDOC can contact the Regional Transportation Authority for specific routes and schedule times.

The Cook County Department of Corrections is located at **2700 S. California Avenue, Chicago, Illinois 60608** in the **County of Cook.**

**NOTE: All of the above rules and regulations are subject to change to ensure the safety and security of the Department as determined by the Sheriff of Cook County or Designee.**
*********************************************************
**AUTHORIZED BY:**

**EXECUTIVE DIRECTOR, SALVADOR GODINEZ. – DATE**    7/27/07

# EXHIBIT 3

# COOK COUNTY DEPARTMENT OF CORRECTIONS



# RULES AND REGULATIONS FOR DETAINEES

Effective: March 1998

00011
SAO

## Detainee Orientation

Upon arrival to the CCDOC, each detainee will receive a written copy of the rules and regulations and an oral explanation of them. The CCDOC will also provide written copy of the rules and regulations in any language used by a significant portion of the Department's detainee population.

A copy of the rules and regulations will also be posted on every tier/wing and in prominent locations in each division.

## Rights and Responsibilities of CCDOC detainees

a. expect that as a human being you will be treated respectfully, impartially, and fairly by all personnel.
b. be informed of the rules, procedures, and schedules concerning the operation of the institution.
c. freedom of religious affiliation and voluntary religious worship.
d. health care which includes nutritious meals, the opportunity to shower regularly, proper ventilation, a regular exercise period, toilet articles, medical and dental treatment.
e. confidential access to the courts.
f. the right to consult with your legal counsel by mail, telephone or personal interview.
g. participate in the use of law library reference materials to assist you in resolving legal problems.
h. right to receive help when it is available at the law library.
i. clean and sanitary living conditions.

## Discipline Categories and Their Penalties

If you are found guilty of any of the acts listed below by a Disciplinary Hearing Board, you may receive one or more of the penalties below, and may include: loss of work assignment, loss of good time, loss of commissary privileges, loss of visitation privileges, increase in security classification, financial restitution, or any combination of the above.

| Category | Penalties |
|---|---|
| I | Verbal Warning to 4 days, Dis. Seg. |
| II | 5 to 9 days, Disciplinary Segregation |
| III | 10 to 14 days, Disciplinary Segregation |
| IV | 15 to 19 days, Disciplinary Segregation |
| V | 20 to 24 days, Disciplinary Segregation |
| VI | 25 to 29 days, Disciplinary Segregation |

**Repeat Violations** - Second or subsequent violations may be subject to the maximum number of days in the next highest category. Depending on the severity of the violation, criminal charges may be imposed pursuant to Illinois or Federal Law.

## CATEGORY I

01 Possession of excess of clothing and/or bedding.
02 Failure to keep cell clean.
03 Tattooing / Possession of tattooing instruments.
04 Littering.
05 Affixing items to walls, light fixtures, or windows.

106 Wearing headbands or head coverings without authorization.
107 Violation of dress code.
108 Storing drinks or foods other than those packaged foods purchased through commissary.
109 Failure to remain silent during detainee movement through the facility.
110 Verbally or physically demonstrating disrespect to a staff member.
111 Possession of contraband.

## CATEGORY II

201 Use of obscene language to staff and visitors.
202 Being in unauthorized area.
203 Presenting false information to sworn staff.
204 Violation of safety or sanitation regulations.
205 Engaging in inappropriate physical contact.
206 Making sexual threats, proposals, or gestures.
207 Committing any act that disrupts the orderly operation of the CCDOC.
208 Verbal threat to another person.
209 Possession of unauthorized medication.
210 Misuse of authorized medication.
211 Indecent Exposure.
212 Possession and/or manufacture of unauthorized beverages (e.g. "hooch").
213 Possession of unauthorized monetary items, (e.g. credit cards, money, checks, etc.)
214 Failure to stand for count or interfering with the taking of the count.
215 Violation of visiting regulations.
216 Violation of telephone or mail regulations.
217 Gambling.
218 Smoking in any non-smoking area.
219 Failure to comply with Intake procedures.
220 Failure to follow the directions of Court Services Deputies while being moved to/from, or during judicial proceedings.

## CATEGORY III

300 Fighting.
301 Refusing an order to lock up.
302 Committing any act(s) which necessitates a security search by staff.
303 Defacing CCDOC property.
304 Possession of stolen property.
305 Disobeying verbal or written orders from sworn staff.
306 Sexual misconduct (voluntary).

## CATEGORY IV

400 Possession of unauthorized clothing.
401 Committing any act that disrupts a judicial proceeding.
402 Throwing or projecting any item or substance.
403 Participating in gang-related activity or communication.

1

00012
SAO

## CATEGORY V

| | |
|---|---|
| 500 | Theft. |
| 501 | Committing any act that requires staff to use force against a detainee. |
| 502 | Possession of Counterfeit Identification. |
| 503 | Committing any act that requires the use of force by Court Service Deputies while being moved, to/from, or during a judicial proceeding. |
| 504 | Unauthorized possession of staff uniform(s) or equipment. |
| 505 | Damaging or altering government property (e.g. uniforms, bedding, linen, furnishings, fixtures and equipment). |

## CATEGORY VI

| | |
|---|---|
| 600 | Murder. |
| 601 | Assaulting any person. |
| 602 | Sexual Assault. |
| 603 | Arson. |
| 604 | Possessing, manufacturing, introducing any weapon ammunition, explosive caustic substance, dangerous chemical, sharpened instrument or unauthorized tool, intoxicant, narcotic, paraphernalia, or drug not prescribed for the individual, or any other dangerous or deadly weapon or substance (e.g. homemade weapons or any sharp instrument such as scissors, fingernail files and all items identified as contraband). |
| 605 | Participating in riots. |
| 606 | Escape/escape attempt. |
| 607 | Battery. |
| 608 | Intimidation, extortion, blackmail, threats by words, action or other behavior. |
| 609 | Gang recruitment. |
| 610 | Attempting to commit any act listed in Category VI, aiding and abetting any person in their commissions, planning to commit or soliciting to commit any offense will be considered the same commission as the act itself. |
| 611 | Participation in a disturbance requiring deployment of specialized units (e.g. K-9, S.O.R.T.). |

## GENERAL RULES

1. Detainees must lock up immediately when so ordered.
2. Detainee must be fully clothed when outside their cells.
3. Detainees may not wear or display any type of gang sign or symbol.
4. Detainees must keep their cell doors locked at all times (unless using the toilet) until lockup.
5. Detainees must sweep cells, make beds, and remove garbage from cells before each morning inspection.
6. Detainees must wet mop cells at least every other day before the morning inspection.
7. Detainees may not attach objects to cell, living area walls, doors, windows, or lights. Doorways must be free from obstruction.
8. Detainees may not display nude pictures or photographs.

9. Privileges begin when living units and cells pass morning inspections.
10. Detainees will be held responsible for damage to their cells, CCDOC linen and uniforms.
11. Detainees must keep dayroom areas clean.
12. Detainees must have permission to enter the exercise area or multipurpose room.
13. Detainees may enter the visiting booth only when they have a visit.
14. Detainees will not be loud, boisterous, or disruptive.
15. Detainees must comply with orders and directions given by sworn staff.
16. Detainees will remain silent when moved throughout the facility.
17. Detainees will not sit on stairs or tables in the living areas.
18. Detainees are required to maintain a level of personal hygiene consistent with group living.

## Contraband

Items in your possession that have not been provided or approved by the department will be considered contraband, confiscated and a disciplinary report will be written.

## Fire Drills

Fire drills are conducted periodically. Detainees are expected to move promptly in an orderly fashion during such drills and to follow the directive of staff members. In the event of a department evacuation or emergency, follow all directions by staff while maintaining silence and order. Exit signs are located throughout the department to assist in the evacuation of staff and detainees during an emergency.

## Filing of Grievances by Detainees

Detainees housed in the CCDOC may initiate written grievances which he/she feels may be discriminatory, oppressive or unjust. The following reasons are to be used as guidelines when determining when to file a grievance:

1. Alleged violations of civil, constitutional or statutory rights.
2. Alleged criminal or prohibited acts by staff.
3. Alleged violation of department policy regarding the detainee's general welfare or safety.
4. To resolve concerns within the facility that create unsafe or unsanitary living conditions.
5. To resolve issues related to a detainee's money, property, education and medical needs.

*Inmate Grievance Forms* will be available in all housing units. When forms are unavailable, grievances can be submitted on plain paper. Upon completion of the *Inmate Grievance Form*, the detainee will place the completed form in the padlocked black metal box marked "Detainee Grievance Box" that is located near the housing unit. The assigned Correctional Rehabilitation Worker (CRW) will collect the forms each day, Monday through Friday. If the detainee requires assistance in completing the form the CRW will provide assistance.

2

An independent appeal panel will review the detainees appeal of the grievance findings.

1. If a detainee wishes to appeal the grievance decision, he/she may seek review directly from the Appeal Panel within 14 days of his/her receipt of the decision. Such requests for appeal should be placed in the same designated locked boxes as the initial grievance.
2. The Appeal Panel will review the grievance file, investigate and make recommendations to the Executive Director or designee with 30 days of receipt of the appeal.
3. The Executive Director or designee will review the recommendations and approve or deny them in writing to the detainee within 10 days.

It should be noted that grievances cannot be initiated regarding findings of the Inmate Disciplinary Hearing Board. An appeal of the Board's findings regarding imposed discipline will be made directly to the division Superintendent or designee. All administrative decisions that affect the detainee's rights and welfare are grievable, with the exception of Disciplinary Hearing Board decisions.

Please be reminded and assured that the grievance procedure is confidential, and the only authorized person to receive, process and forward the grievance is the CRW assigned to the division where the detainee is housed.

*Emergency grievances* are those involving an immediate threat to the welfare or safety of a detainee. All emergency grievances must be clearly labeled **"EMERGENCY GRIEVANCE"** on top of the grievance form. If a detainee deems that the grievance is an emergency, the Correctional Officer assigned to the living unit, will contact a CRW, or in the CRW's absence, the Shift Commander

## Disciplinary Procedures
Any detainee charged with the commission of any act(s), where a detainee may be subject to disciplinary segregation, is entitled to the due process procedures outlined in General Order 14.8A. **A COPY OF THE GENERAL ORDER IS ON FILE IN ALL DEPARTMENTAL LAW LIBRARIES, AND IS AVAILABLE FOR REVIEW UPON WRITTEN REQUEST.** Detainees will receive a copy of the four-part Disciplinary Report form stating the specific prohibited act(s) they are charged with and a brief statement of facts. Detainees will be entitled to a hearing and decision within seven (7) days-excluding weekends and holidays. When a detainee is placed in disciplinary detention status, the supervisor ordering pre-hearing detention will forward a copy of the four-part disciplinary form to the Disciplinary Hearing Board for review within seventy-two (72) hours, including weekends and holidays of the detainee's detention. Any time spent in pre-hearing detention will be credited against any subsequent disciplinary detention imposed.

A detainee charged with a rule violation will have the opportunity (but is not required) to be present, make a statement, present documentary evidence, and call witnesses on his or her behalf when such witnesses are reasonably available and their presence is not deemed by the board to be unduly hazardous to department safety. The Disciplinary Hearing Board is empowered to impose appropriate sanctions when a charge is substantiated by information obtained in the hearing process.

Detainees have the right to appeal any decision of the Disciplinary Hearing Board by filing a written request with the Superintendent of the division in which the Disciplinary Hearing was held. This appeal must be made within ten (10) working days from the date of being advised of the decision.

The divisional Superintendent may affirm or reverse the decision outright, return the decision back to the hearing board for further proceedings, or modify, but not increase the sanction imposed. A decision will be made within five (5) days, and a written copy of the decision will be provided to the detainee. The detainee will sign and date, indicating he or she has received notification of the appeal decision.

**THE COOK COUNTY DEPARTMENT OF CORRECTIONS DOES NOT TOLERATE CRIMINAL ACTIVITY OF ANY KIND. THE POSSESSION OF CONTRABAND, ASSAULTS AGAINST STAFF OR OTHER INMATES, AND DAMAGE TO COUNTY PROPERTY WILL BE REFERRED TO THE COOK COUNTY STATE'S ATTORNEY FOR CRIMINAL PROSECUTION.**

## Inmate Restitution
Detainees are held responsible for County property damaged or destroyed while in custody of the Sheriff of Cook County. Detainees are required to pay for the repair, replacement and/or re-installation of this property when it is determined by an official hearing board the detainee is responsible for the damage.

Upon a finding of GUILTY by the department Disciplinary Hearing Board, the replacement cost of destroyed/damaged property will be deducted from the detainee's trust account. In the event the funds in these accounts are not adequate to satisfy the replacement cost(s), an encumbrance will be placed on future monies received by the detainee until the financial obligation is satisfied.

Satisfaction of all claims will remain on file for seven (7) years, after the date of property destruction or damage. In the event a detainee is released (with an encumbrance and subsequently re-incarcerated, required payment of the debt will remain active until satisfied.

## Offered Services for Detainees
The programs and services described below are available to all detainees of the CCDOC, except where indicated. In most

00014
SAO

instances, an *Inmate Request Form* will be filled out by the detainee and given to a Correctional Rehabilitation Worker, to request participation in these programs. The programs include:

### Chicago Board Of Education

Eligible detainees from 17 to 21 years of age will receive public school education. Basic and remedial courses are conducted. Student detainees may enroll and earn their General Equivalency Diploma (G.E.D.) when applicable.

### City Colleges of Chicago

Provides eligible detainees 22 years and older the opportunity to enroll and prepare for the General Equivalence Diploma (G.E.D.).

### Programmed Activities for Correctional Education (PACE)

PACE Institute is a private, non-profit program for detainees in the CCDOC. The program offers the following opportunities: Literacy education, volunteer tutorials, High School G.E.D. preparation, advising, individual and group counseling.

### Health Services

Cermak Health Services of Cook County, an affiliate of the Cook County Bureau of Health, provides on site medical, dental and mental health services. Hospitalization and specialized medical services are arranged with other Bureau affiliates (Cook County, Provident, and Oak Forest Hospitals). The on site services include:

- Intake Screening            - Specialty Clinics
- Emergency Room             - Infirmary
- Health Education (HIV, STD, TB, etc.)   - Dental
- Therapy Services            - Sick Call
- Out-patient dialysis         - Mental Health

Self referrals for health services can be done by filling out a *Health Care Request* form. This form is available from the Cermak staff or it can be found in the housing area on the wall mounted black painted container marked "Health Request Box". After the form is filled out it is to be put inside this container.

### Chaplain

Holds religious services for many denominations on a regular basis and also provides individual counseling for detainees.

### Personal Hygiene

You are expected to maintain personal body cleanliness. Showers are located in the housing areas for your use. Upon intake, soap, toothpaste, a toothbrush, comb and other miscellaneous personal care items are issued to you. Personal care and hygiene items are available through the commissary. A detainee considered indigent (maintains a balance of less than $1.00 for seven consecutive days and has not purchased a commissary item the previous week), and has been physically

present for those seven days will be supplied with some personal hygiene items once a week at no cost.

### Laundry

Detainees will be given the opportunity to exchange linen and uniforms on a weekly basis.

### Barber/Beauty Shop

All detainees have routine access to barber/beauty shop services that are provided and scheduled in each division.

### Meals

The department serves three (3) meals a day. Special diets may be approved upon written request, and are available.

### Program Services

Correctional Rehabilitation Workers are available to aid in resolution of detainee complaints, grievances, and ongoing concerns. CRW's also act as the detainee's link with families, friends, attorneys, courts, probation officers, and the Dept. of Children and Family Services. Emergency phone calls may be approved by the CRW. "Write-outs" may be given to indigent detainees when available. Problems regarding money will also be handled by the CRW, requiring detainee signature on all checks and authorized documents.

### Commissary

Sells a variety of food and personnel hygiene products to detainees that have unencumbered funds in their trust account. Commissary is available weekly according to schedules posted in each division. Spending limits per week will apply.

### Library

Facilities for general reading are available through the General Circulation Library providing requested reading material for all detainees.

### Law Library

All detainees housed in CCDOC will have access to legal information related to their cases. Law libraries located throughout the department are made available for this purpose.

Law Library Services are available Monday through Friday during **MORNING** and **AFTERNOON** sessions for research regarding criminal and civil matters. Sessions will be, at minimum, one-hour and a half. Subsequent additional sessions will require permission from Law Library staff or the submission of a new *Inmate Request Form*, as outlined above. A notary service is also available to all detainees. *Inmate Request Forms* will be available for detainees in all housing units. These forms shall be utilized when detainees request Law Library access. Upon the completion of the *Inmate Request Form*, it will be picked up from within the division. An assigned Program Services Department, Law Librarian will receive the forms each day, Monday through Friday. Detainees will be allowed Law Library access regardless of security classification. If the detainee requires assistance in completing the *Inmate Request Form* assistance will be provided by individuals of the Program Service Department.

4

Detainee requests to the Law Library will be processed in accordance with the following priority and guidelines:

1. Detainees with court orders that stipulate Law Library access, and those detainees who act as their own attorney, will be allowed access according to the provisions of the court order.
2. Detainees that have pending court dates; with the closest upcoming court date will be allowed access.
3. With the exception of court order access time provisions, access is for one session, either **MORNING** or **AFTERNOON**, once a week. Each session will be, at minimum, one hour and a half. Subsequent additional sessions will require the submission of a new *Inmate Request Form*, as outlined in this directive.

## Telephones

Telephones are located in living units. You will share telephones with detainees in your living unit. Telephones will not accept incoming telephone calls. Telephone privileges will begin after the your living unit passes daily inspection. You are permitted to use the telephone whenever you are in the dayroom. Outgoing telephone calls will be billed as collect calls. If the person you are calling accepts the call, they will be charged for the call. Your telephone calls will be limited to 15 minutes. After 15 minutes, the call will be cut off by the telephone system. Abuse or illegal use of the telephone privileges may result in the loss of privileges, disciplinary action, or criminal charges.

## Mail

Detainees will be permitted to receive mail while incarcerated provided that, at the time of admission to the Department, each detainee has given their consent for designated CCDOC personnel to open and inspect incoming mail in accordance with CCDOC regulations and relevant laws. If a detainee does not give their consent to such inspection, all mail addressed to that individual will be returned to the Post Office unopened and marked "Refused". Outgoing mail is not opened, read, or censored. All detainee mail shall be addressed as follows:

Detainee Name_____ ID#_____
Division_____ Wing/Cell_____
P.O. Box 089002
Chicago, Illinois 60608

## Treatment Alternative to Safer Communities (TASC)

Provides diagnostic evaluation, and court ordered referrals for treatment and tracking service for substance abusing detainees under the jurisdiction of the criminal justice system. Anyone with a pending criminal case may be eligible for TASC services, except those charged with a violent crime.

## Sheriff's Female Furlough Program (S.F.F.P.)

S.F.F.P. combines the use of electronic monitoring devices and components of daytime programming to provide selected participants with a maximum level of supervision as well as the opportunity to participate in life skills programming.

## Administrative Mandatory Furlough (AMF)

Detainees that meet eligibility requirements may be released on AMF. Please contact Correctional Rehabilitation Workers for eligibility requirements.

## Electronic Monitoring (EM)

Detainees that meet eligibility requirements may be released on EM. Please contact Correctional Rehabilitation Workers for eligibility requirements.

## Chicago Legal Aid to Incarcerated Mothers (CLAIM)

A non-profit agency that provides free legal services to incarcerated mothers to help benefit their children and families.

## My Sister's Keeper

A complete after-care program that assists women who have been recently released from the correctional system in the following areas: educational referral, shelter care, self-esteem and family/individual counseling.

## Veterans Administration

A representative from the Veterans Administration provides veterans benefits for health care, housing, education, and many ongoing basic needs.

## Trust Department

Holds funds for detainees while they are incarcerated at the CCDOC. Any money in the possession of the detainee when they enter the Department is deposited in an account bearing the name and identification number of the detainee. After arrival, the only authorized means of receiving funds from the outside is in the form of money orders, cashier's checks and certified checks, and must be sent by mail. Personal checks are not accepted. All money orders, etc. must bear the detainee name and identification number and not exceed $100.00 at any one time. Ten (10) business days are required before these funds can be used for any purpose other than commissary.

Western Union can be utilized to transfer funds to the department. Please contact the Correctional Rehabilitation Worker for information.

At discharge the detainee shall present themselves to the Property Office with valid picture identification. The Property Office remains open 24 hours a day. No money can be given without picture identification. Release of funds cannot be processed until the Commissary Department confirms that no payment is due. Cash will be given for accounts up to $100.00 during the hours of 9:00 a.m.-1:00 p.m. and 2:00-8:00 p.m. Checks will be given for accounts over $100.00 during the hours of 9:00 a.m.-1:00 p.m. and 2:00- 3:00 p.m. Upon the request of a detainee, Correctional Rehabilitation Workers shall assist in the release of money to another individual or agency. The receiving party must have picture identification.

5

identification and the detainee's property receipt. Items on receipt will be stored for a maximum of 120 days from the discharge date. All property not returned to detainees within 120 days from the discharge date will be disposed of. Upon the request of the detainee, Correctional Rehabilitation Workers will assist in the release of personal property to another individual or agency. The detainee will sign a release form identifying the name and address of the person authorized to receive the property. The receiving party must have picture identification.

### Internal Investigations
Reports directly to the Inspector General in matters concerning criminal activity within the CCDOC; will report directly to the Executive Director for all other administrative matters. Any threat of harm done to any detainee, Correctional Officer or civilian employee, or any other criminal offense, and any disturbance or threat to the order and welfare of the CCDOC will be investigated thoroughly and confidentially.

### Bonding Office
The Bond Office is open from 8:00 am - 12:00 Midnight, 365 days per year and accepts payment by cash, cashier's check or certified check. Cashier and certified checks must be verified with the bank by the bond clerk. Checks are to be made payable to Clerk of the Circuit Court.

### Voter Registration and Absentee Balloting
Pre-trial detainees who are residents of Cook County will be able to register to vote and cast absentee ballots in elections while they are incarcerated. The eligibility requirements will be posted at the beginning of every registration period, and detainees will be informed how they can register to vote. Voter Registration will be conducted by the Program Services Department personnel who have been trained by the Board of Election authorities.

All elections are held under the supervision of a representative from the Board of Election Commissioners.

### Visitation
All persons entering or exiting the CCDOC will be required to produce one (1) valid government picture I.D. which will include: drivers license, state identification card, passport, etc. If a government I.D. is not available, a combination of the following are acceptable: Public Aid card accompanied by medical card and/or voter registration card. A current school identification card is acceptable for students 17 years of age and younger. No one under 17 years of age will be allowed to enter unless accompanied by an adult. All bags and containers will be searched for contraband before the visitor is permitted to enter the department. All visitors will be subject to search under existing departmental guidelines.

**Any visitor attempting to introduce contraband into the facility will be subject to criminal prosecution under existing Illinois or Federal law.**

Family and/or friends should contact the division for information regarding the visitation schedule and visitation procedures. For detainee information please call **1-800-425-JAIL.**

### Minors
Persons charged with a crime and are under 17 years of age will not be housed at the CCDOC. Any minor brought to the department should notify a Correctional Officer or Correctional Rehabilitation Worker as soon as possible.

### Bureau of Vital Statistics
Provides marriage license application services to incarcerated detainees and age verification to under-age detainees incarcerated in this facility, thus allowing the courts to transfer the under-age detainee to a juvenile facility.

### Family Emergency Procedures
Detainee's next of kin or other designated individuals shall be notified in case of death or serious illness. This information shall be obtained from the detainee at time of admission and maintained in the detainee's central file.

### Facility Location
The Cook County Department of Corrections is accessible by several bus lines operated by the Chicago Transit Authority. Persons interested in transportation information and/or directions to the department can contact the Regional Transportation Authority for specific schedules and times of operation.

The department is located at 2700 South California, Chicago, Illinois, 60608, County of Cook.

## AUTHORIZED BY:

_Ernest Velasco_                    3.23.98

Ernesto Velasco - Executive Director          Date

00017
SAO

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO            4891
CONNECTION TEL            96034420
SUBADDRESS
CONNECTION ID
ST. TIME           11/12 11:20
USAGE T            01'42
PGS. SENT             8
RESULT             OK
```



**OFFICE OF THE STATE'S ATTORNEY**
COOK COUNTY, ILLINOIS

ANITA ALVAREZ
STATE'S ATTORNEY

500 RICHARD J. DALEY CENTER
CHICAGO, ILLINOIS 60602
(312) 603-5440

# FACSIMILE

## DATE: November 12, 2009

## PLEASE DELIVER THE FOLLOWING PAGE(S) AS ADDRESSED:

## TO: Carole McFadden

## FAX #: (312) 603-6420  *4420*

## FROM: RONALD WEIDHUNER, ASA
## COOK COUNTY STATE'S ATTORNEY'S OFFICE
## TORTS/CIVIL RIGHTS SECTION
## PHONE #: (312) 603 - 5527
## FAX #     (312) 603 - 5797

## TOTAL # OF PAGES (Including cover): *8*

## SUBJECT: Request for current Cook County Department of Corrections Rules and Regulations for Detainees *in reference to attached Rules & Regulation*



## OFFICE OF THE STATE'S ATTORNEY
### COOK COUNTY, ILLINOIS

ANITA ALVAREZ
STATE"S ATTORNEY

500 RICHARD J. DALEY CENTER
CHICAGO, ILLINOIS 60602
(312) 603-5440

# FACSIMILE

**DATE: November 12, 2009**

**PLEASE DELIVER THE FOLLOWING PAGE(S) AS ADDRESSED:**

**TO: Carole McFadden**

**FAX #: (312) 603-~~6420~~ 4420**

**FROM: RONALD WEIDHUNER, ASA**
**COOK COUNTY STATE'S ATTORNEY'S OFFICE**
**TORTS/CIVIL RIGHTS SECTION**
**PHONE #: (312) 603 - 5527**
**FAX #      (312) 603 - 5797**

**TOTAL # OF PAGES (Including cover):** ~~7~~ 8

**SUBJECT:** Request for current Cook County Department of Corrections Rules and Regulations for Detainees *in reference to attached Rules + Regulation*

*The information contained in this facsimile message is intended only for the use of the individual or entity names above. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited*

*If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the U.S. Postal Service.*

*If you do not receive all the pages, please call the sender at the number provided above as soon as possible. Thank you.*

# EXHIBIT 4

| | COOK COUNTY DEPARTMENT OF CORRECTIONS<br><br>**GENERAL ORDER** | DISTRIBUTION<br><br>**Key Manual Holders** | EFFECTIVE DATE<br><br>06/01/92 | GENERAL ORDER NO.<br><br>2.3 |
|---|---|---|---|---|
| CHAPTER  **Fiscal Management** | | AMENDS | | RESCINDS 10/01/90 |
| SUBJECT       **Inmate Trust Fund Accounting** | | | | PAGE(S) 1 of 8 |

I.   POLICY

All inmate trust funds held by the Cook County Department of Corrections shall be controlled and monitored by a system of generally accepted accounting procedures.

II.   PROCEDURE

A.   Purpose – The purpose of this general order is to establish uniform guidelines for the handling of inmate funds and personal property.

B.   Applicability – This general order is applicable to all operating areas within the Cook County Department of Corrections.

C.   Internal Audits – An internal audit of this general order is not required. However, the Cook County Auditor or an external auditor will examine the books and records of the trust office annually, or more often at his or her discretion, to ensure compliance wit institutional rules and generally accepted accounting principles.

D.   Definitions

As used in this general order, the following definitions shall apply:

1.   Inmate Trust Record - An official listing of the fund transactions for an individual inmate. This record is established upon an inmate's arrival with funds, maintained throughout his/her stay in the institution, and held in the archives for two years following the inmate's release.

FROM LT. JANOS UNIT COMMANDER. RCDC        (WED)JUN 14 2006 16:03/ST. 16:02/No. 6804528093 P 4

2.  Commissary Bates Number – An official number assigned to the commissary order posted (deducted) from the inmate trust account.

3.  Release of Funds Form – An official document used by an inmate to request disbursement of funds from his/her trust account. This form (RFT) must be countersigned by a social worker and a social worker supervisor. This form is not required for commissary purchases.

4.  Mailroom Receipts – Money for inmate received through the mail in the form of money orders, cashier's checks or other negotiable instruments. Cash should not be sent through the mail. Any cash received shall be deposited in the Inmate Welfare Fund (see Section).

5.  Intake Receipts – Money and personal property (jewelry, wallet, credit cards, etc.) collected from each inmate upon admission to the Department. This receipt must be presented to the Trust Property Section to claim the inmate's personal property that will be held for one year (see Section E-1-ciii).

E.  Requirements

1.  Upon admission, the designated intake employee shall collect and secure all cash, checks, and personal property for each inmate.

    a.  All cash and personal property is to be recorded on the pre-numbered triplicate intake receipt form for each inmate admission. The form shall list the amount of currency and coin and give a description and count of personal items. The intake receipt shall give the inmate's name, identification number, date, and the signature of the intake employee. The inmate shall also sign the receipt to confirm the accuracy of the money and property as listed on the receipt.

        i.  Original intake receipt shall be given to the trust office.

        ii.  Second copy of the receipt shall be attached to the inmate property envelope.

        iii.  Third copy of the receipt shall be given to the inmate.

Case: 1:07-cv-02427 Document #: 56 Filed: 12/02/09 Page 62 of 67 PageID #:481

b.    At the end of the intake employee's tour of duty, a cash summary report shall be prepared which lists the total of cash received, balanced against the total amount of money shown on the pre-numbered intake receipts issued for that shift. All receipt numbers shall be accounted for with copies of voided receipts attached. The cash summary report shall bear the signature of the intake employee, the shift and date.

i.    Original intake receipt, cash and cash summary report shall be placed in the trust office safe.

ii.   The following morning, the trust office supervisor will open the safe, verify the totals, countersign the cash summary report, and remit funds to the bank.

iii.  The intake receipts are posted daily to each inmate's account.

c.    Each inmate's personal property shall be placed in an envelope by the intake employee with the second copy of the intake receipt attached to the envelope.

i.    The inmate's name and identification number shall be written on the envelope and initialed by the intake employee and heat-sealed in a clear plastic bag.

ii.   The intake employee shall record the identification number of each property envelope for that shift into the property logbook and file sealed envelopes by numerical order in the property room cabinets.

NOTE: ~~Articles of personal property left for more than 90 days after inmate's discharge shall be destroyed, sold used by the Department.~~

4.    Car Far for Discharged Inmates

a.    Inmates that are discharged on a cash bond or have funds available on their trust account will not receive care fare.

b.    Inmates that are discharged other than cash bond and have no funds available in their trust account may receive a bus fare token for public transportation.

00005
SAO

c.    Inmates needing tokens for transportation (as in b above)
      shall sign his/her name and identification number on the
      Care Fare Sheet before a token is disbursed. The care far
      sheet will be balanced at the end of each shift.

d.    Transportation tokens will be replenished by the Business
      Office based on the number of transportation tokens issued
      as stated on the Care Fare Sheet.

e.    The trust employees must replenish the carfare between
      8:00 a.m. and 4:00 p.m., Monday through Friday, in order
      to maintain enough care fare for evenings, weekends and
      holidays.

f.    Inmates requiring transportation other than as provided
      above shall make arrangements with their social worker
      prior to discharge.

5.    Mailroom Receipting of Funds

a.    The correct name and identification number must appear on
      all money orders and checks. If the name and identification
      number do not match, the money order or check will be
      returned to the sender.

b.    Money orders and cashier's checks up to $100 may be
      accepted through the mail. Checks mailed directly from
      federal, state and county jails may be accepted. These
      funds are immediately available for commissary purchases
      but shall not be released for any other purpose for 10
      working days.

c.    Checks received by the mailroom DIRECTLY from the
      governmental agencies, insurance companies and courts of
      law may be accepted, provided the checks are drawn on
      that agency's or firm's account. These checks shall be
      verified by the trust office supervisor or his/her designee.

d.    Checks received from businesses, which are drawn on their
      commercial checking account, may be accepted provided
      they can be verified by the trust office supervisor or
      designee. The amount of the check will be withheld from
      the inmate's use for a period of time sufficient to clear the
      drawer's account.

Case: 1:07-cv-02427 Document #: 56 Filed: 12/02/09 Page 64 of 67 PageID #:483

e.  The mailroom personnel shall run tape totals of money orders and checks received and prepare a summary sheet. The money orders/checks and summary sheet are delivered to the trust cashier who verifies the tape totals. Upon verification, the totals are entered into the logbook, and the logbook is signed and dated by the mailroom clerk.

f.  The trust cashier shall balance the summary sheet with the actual money orders and reject any money order or check that is not acceptable. All rejected money orders will be entered on the summary sheet and the summary sheet total adjusted accordingly. The trust cashier will sign the adjusted summary sheet. See Sections II-E-9 for disposition of unacceptable money orders/checks.

g.  The trust supervisor shall be responsible for placing the proper restrictive endorsement on all checks and money orders:

> Pay to the Order of
> Name of Bank
> Name of Facility
> Account Name and Number
> For Deposit Only

h.  The trust cashier shall obtain a batch number from the trust supervisor and post (credit) the acceptable money orders/checks to the inmate's trust account. The entry shall include the date, inmate's name, identification number, housing unit, amount and serial number of each money order or check.

i.  The trust supervisor shall make daily bank deposits to the inmate trust fund and shall keep an accurate checkbook balance and make journal entries as required by the Finance Administrator.

j.  The computer room will generate a pre-numbered triplicate receipt for each inmate account that has been credited, and run batch reports. The batch reports will be balanced against the trial balance report each day.

k.  Cash will not be accepted through the mail. Cash will not be credited to the inmate trust account but will be deposited to the inmate welfare fund. A notice shall be sent to the inmate explaining the method for claiming these funds.

6.      **Commissary Purchases**

Inmate commissary purchases shall be deducted from each inmate trust account in accordance with an order placed with the commissary on the authorized commissary form. Commissary purchases shall not exceed quantity or dollar limits as established by the Assistant Executive Director for Administration and Planning.

a.      Commissary will be served in accordance with a schedule provided for each division or unit. Each inmate's trust account funds will be verified the MORNING of the DAY BEFORE serving.

b.      Commissary personnel shall total the amount of purchase requested by each inmate on hi/her commissary form. An identifying (Bates) number shall be assigned each request form and delivered to the trust office.

c.      The trust office shall deduct from the inmate's trust account an amount equal to the total order but not in excess of the inmate's trust account balance.

d.      If the inmate's trust account does not have sufficient funds to cover the total amount of purchases requested, the trust office will indicate on the commissary form the amount of money available in the inmate's trust account for commissary purchases.

e.      The commissary form will be returned to the commissary where adjustments will be made as required based on the amount of money available in the inmate's trust account.

f.      If money has been deducted from an inmate's account and he/she is not served, a refund shall be posted to his/her account.

7.      Transfer of funds to Others

Inmates requesting to purchase approved items that are not provided in the commissary shall:

a.      Secure the services of a social worker that will verify the inmate's trust account balance with the trust office.

00008
SAO

b.  The social worker will prepare an "Authorization to Release Funds" form (see Section II-D_3), a copy of which shall be provided to the Business Office.

c.  Business Office staff shall issue a check for the appropriate amount to the intended party for purchase.

d.  Business Office staff shall deduct the purchase amount and cost of envelope and stamp from the inmate's trusts account.

e.  Approved items (not available from the Department commissary) purchased in this manner will be delivered by the social worker to the inmate.

8.  Unacceptable Money Orders/Checks

Money orders and checks will be returned to the sender:

a.  If inmate name and number do not match;

b.  If inmate name or number is missing;

c.  If inmate has been discharged;

d.  If money order/check has been altered.

9.  When no return address has been provided for unacceptable money orders/checks;

a.  The money order/check will be deposited in the inmate welfare fund.

b.  The money order/check can be claimed by the remitter or inmate by presenting the original receipt and picture identification within two years. Money orders/checks not claimed within the two-year period shall be deposited in the inmate welfare fund.

G.O. 2.3 – Inmate Trust Fund Accounting                              8

10.     Trial Balance

        The trust office shall balance all inmate trust accounts to bankbook
        balances daily.

        ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

        Authorized by:

        _____

        Executive Director                              Date

00010
SAO