UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEONCIO ELIZARRI, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 07 CV 2427 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| SHERIFF OF COOK COUNTY and ) | |
| COOK COUNTY, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs have sued defendants Sheriff of Cook County and Cook County, Illinois, for maintaining policies and practices that cause detainees' personal property to be lost, abandoned, or stolen in violation of their constitutional right to due process. Defendants now move for summary judgment, contending that their policies for receiving, maintaining, and returning detainee personal property are adequate. For the reasons set forth below, the motion is denied.

**I. BACKGROUND**

**A. Procedural History**

Plaintiffs Leoncio Elizarri, Ronald Richardson, and Grzegorz Zawadowicz (collectively, "Plaintiffs") bring suit under 42 U.S.C. § 1983 against the Sheriff of Cook County in his official capacity and the County (collectively, "Defendants"). Plaintiffs are each former prisoners in the Cook County Jail. When they were admitted to the jail, they had personal property taken from them; upon their request for the return of their property, they were informed that the property was lost or stolen. Plaintiffs allege that Cook County Jail personnel have a practice of losing, destroying or stealing prisoners' personal property. Plaintiffs further allege that Defendants'

deliberate indifference to this practice caused deprivation of property without due process in violation of the Fourteenth Amendment.

The court granted Plaintiffs' motion for class certification on January 24, 2011 for "[a]ll persons who, on or after June 6, 2005, made a timely request for the return of property taken from them upon admission to the [Cook County] Jail and were informed that the property had been lost or stolen. A request by a person who was released before July 27, 2007 was timely if it was made within 120 days of his/her release. A request by a person who was released on or after July 27, 2007 was timely if it was made within 90 days of his/her release." (Order, ECF No. 101, at 2 (internal quotation marks omitted).)

On September 29, 2014, the court denied Plaintiffs' motion for partial summary judgment on the issue of liability. Now before the court is Defendants' motion for summary judgment.

### B. Plaintiffs

On October 26, 2005, Leoncio Elizarri entered the Cook County Jail with identification and jewelry. In his deposition, Elizarri states that he also had a watch and wallet, but Defendants correctly note that his signed intake form does not list these items. Elizarri left the jail on September 29, 2006 to serve 61 days in the Illinois Department of Corrections ("IDOC"). When Elizarri returned to the jail on December 7, 2006 to retrieve his property, jail personnel informed him that they could not find his property and provided him with a lost property claim form and instructions for filing a suit against the Cook County Department of Corrections ("CCDOC").

Ronald Richardson submitted a declaration in this case stating that he placed a watch, diamond ring, identification, and birth certificate into a bag when he was admitted to the Cook County Jail on July 31, 2006. Defendants dispute this assertion, as Richardson's signed intake form indicates that he had no personal property when he entered the jail. Richardson remained

2

in the jail through May 21, 2010. On the day of his release, Richardson went to the property window at the jail and requested his property. A jail employee told Richardson that the jail did not have his property and that his only recourse was to file a lawsuit in the Circuit Court of Cook County.

On August 5, 2006, Grzegorz Zawadowicz was processed into the Cook County Jail. Zawadowicz submitted a declaration in this case stating that he surrendered his clothes, keys, wallet, watch, identification, and jewelry when he was processed. Defendants dispute this assertion, as Zawadowicz's signed intake form indicates that the only property he surrendered was cash. Following Zawadowicz's release from jail, he sought the return of his property. He was informed that his property was at a warehouse and that he should call to learn when his property had been returned to the jail. Zawadowicz made repeated inquiries about his property. In July 2009, in response to Zawadowicz's third inquiry, a correctional officer told him that the property had been lost.

### C. Cook County's Procedures for Receipt and Care of Detainee Property

The CCDOC has written general orders that members of the Sheriff's correctional staff must follow. General Order 14.21 requires detainees entering the jail to surrender their personal property and civilian clothing. Since 1987, the CCDOC has issued multiple General Orders that prescribe the procedures for receiving, storing, and returning detainees' personal property and investigating claims of property loss or theft. (*See* Pls.' Ex. 59 (summarizing historical development of CCDOC's written policies concerning detainee property).) Other written orders or policies are reflected in "Post Orders," "Divisional Procedures," "Notices," "Sheriff's Orders," department-specific additions or amendments to the General Orders, "Property Slips," "Property Receipts," and "Inmates Rules." (*See Id.* at 3-9.)

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

## III. ANALYSIS

To establish a claim for a due process violation under 42 U.S.C. § 1983 against Defendants, Plaintiffs must show that they "(1) suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority . . . which (3) was the proximate cause of [their] injury."[1] *King v. Kramer*, No. 13-cv-2379, 2014 WL 3954028, at *10 (7th Cir. July 10, 2014); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "The policy can be 'an implicit policy or a gap in expressed policies,'" *Wells v. City of Chicago*, No. 09-cv-1198, 2012 U.S. Dist. LEXIS 4749, at *41 (N.D. Ill. Jan. 16, 2012) (quoting *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009)), but "[w]hat is needed is evidence that there is a true municipal policy at issue, not a random event." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). "If the same problem has arisen many times and the municipality has acquiesced

---

[1] A suit against the Cook County Sheriff in his official capacity is analyzed under the same *Monell* standard as a suit against the County itself. *See Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014).

in the outcome, it is possible (though not necessary) to infer that there is a policy at work, not the kind of isolated incident that . . . cannot support municipal liability." *Id.*

The federal right in dispute in this case is procedural due process. "A procedural due process claim requires the plaintiff to show (1) that he was deprived of a protected liberty or property interest, and (2) that he did not receive the process that was due to justify the deprivation of that interest." *Armato v. Grounds*, 766 F.3d 713, 721-22 (7th Cir. 2014); *see also Zinermon v. Burch*, 494 U.S. 113, 125 (1990)) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*") (emphasis in original).

Here, Defendants do not challenge Plaintiffs' assertion of a constitutionally protected interest in their personal property. The only issue is whether Plaintiffs can show that they "did not receive the process that was due to justify the deprivation of (their property) interest." *Armato*, 766 F.3d at 722. "In determining what process is due in a particular situation, a court considers: (1) the private interest affected by the government action; (2) the risk of erroneous deprivation of the interest through the procedures used, and the probable value of any alternative procedural safeguards; and (3) the government's interest, including the function involved and additional administrative or fiscal burdens that alternate procedural requirements would require." *Saiger v. City of Chicago*, No. 13-cv-5590, 2014 U.S. Dist. LEXIS 83206, at *8 (N.D. Ill. June 19, 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

The first factor is undisputed. The private interest at stake is Plaintiffs' interest in recovering their personal property, including whatever civilian clothing and personal belongings they brought into the facility and had to release into CCDOC custody. Defendants do not

attempt to diminish Plaintiffs' interest in recovering their personal belongings upon being discharged from the jail.

The second factor, on the other hand, is disputed. Defendants predicate their motion on the adequacy of the CCDOC's procedures, while Plaintiffs focus on gaps in those procedures and practices that occur notwithstanding the procedures. Viewing the facts in a light most favorable to Plaintiffs, the court finds there is sufficient evidence from which a trier of fact could infer that Defendants violated Plaintiffs' procedural due process rights through gaps in express policies and the widespread practice of storing detainee property in a manner that resulted in repeated property loss.

First, Plaintiffs have presented evidence that Defendants maintain contradictory policies that cause staff to discard property before detainees are released. Plaintiff's retained expert, Sheila Vaughan, examined the CCDOC's procedures for processing, storing, and returning detainee property.[2] (*See* Expert Report of Sheila Vaughan, Pls.' Ex. 59.) Vaughn's findings conflict with several assertions Defendants make in support of their motion. For example, Defendants repeatedly claim that the CCDOC maintains a policy of holding a detainee's personal property for 90 days after the detainee is discharged, and that this policy is constitutionally sufficient. But Vaughn determined that, as late as 2006, there is evidence that the CCDOC had both jail-wide and division-specific policies that ordered the destruction of detainee personal property either 90 days or 120 days after *admission* into the jail—regardless of whether a

---

[2] Defendants take no position as to whether Vaughn is qualified to render the opinions she tenders in this case. According to Vaughn's report, she was a member of the New York City Department of Corrections for over 22 years. During that time, she worked in the intake area, where she was responsible for the receipt, inventory, and placement of newly admitted inmates' personal property. She held titles including supervisor and warden of the NYCDOC and trained staff in the procedures for storing property, documenting its return to inmates, and investigating reports of missing or damaged property. The court finds that Vaughan is sufficiently qualified to offer expert opinions on the CCDOC's procedures for processing and handling property. *See* Fed. R. Evid. 702.

detainee remained incarcerated when the 90-day or 120-day retrieval period lapsed. (Pls.' Ex. 59 at 12-13.)

Second, Plaintiffs have adduced evidence showing that Defendants' lack of "formal process for disposing of abandoned inmate property" has created an overflow of unclaimed personal property and affected staff members' ability to retrieve a given detainee's personal property upon request. (*Id.* at 15.) During an August 2013 tour that Vaughan and Plaintiffs' counsel conducted of the storage rooms at the CCDOC, Jail Director Carmen Desadier can be overheard saying, "This is a nightmare. . . There's crap everywhere." (Pls.' Ex. 47 at 4:08-4:13; Pls.' Ex. 39.) Desadier's comments are alarming because the tour was conducted in 2013, several years after the Illinois Department of Labor had ordered the CCDOC to reorganize the detainee property kept in storage and remove excess items. (Pls.' Ex. 38 at 2.) This order issued after jail staff had complained to the Illinois Department of Labor that "the conditions in the property room were intolerable because of the accumulation of inmate property." (Pls.' Ex. 59 at 15; Pls.' Ex. 38 at 2.) In Vaughan's opinion, Defendants' continued failure to implement a "formal procedure to identify and remove abandoned inmate property" has transformed parts of the CCDOC "into a warehouse for literally tens of thousands of bags of inmate personal property." (Pls.' Ex. 59 at 16.) Defendants do not explain how jail staff is able to distinguish between unclaimed property and property that is simply lost amidst the heaps.

Moreover, two audits by the Sheriff's Office of Policy and Accountability, one in May 2011 and the other in July 2011, identify possible gaps in policies concerning the intake and storage of inmate personal property. The May 2011 audit focused on the "Storage and Disposal of Inmate Civilian Clothing Items." (Pls.' Ex. 51 at 1.) The audit determined that "[t]here is no CCDOC General Order governing how to process and handle inmate personal clothing items.

Each CCDOC division follows their [sic] own practices when it comes to disposing [sic] inmate personal clothing items for inmates that have been transferred out of CCDOC to IDOC." (*Id.*) Clothing room officers reported that the clothing room "was disorderly" and that "it was difficult to find discharged inmates [sic] clothing items." (*Id.* at 3.) Due to the purported absence of policies, "Clothing was considered abandoned anywhere from 30 days to 6 months after an inmate was released from custody or transferred to [IDOC]." (Pls.' Ex. 59 at 10) (referencing Pls.' Ex. 51.)

The July 2011 audit addressed the "Collection, Inventory, Storage and [ ] Return Procedures for Arrestee Personal Property." (*See* Pls.' Ex. 38.) One area of concern the audit identified resulted from the CCDOC's adoption of the "compliant/non-compliant property" policy. Beginning in 2008, Cook County implemented a pilot program that established different intake and storage procedures for detainee personal property, depending on whether the item qualified as "compliant property" or "non-compliant property."[3] (Pls.' Ex. 59 at 7-8.) Under the program, compliant property "would "accompany the arrestee to the Cook County Jail." Non-compliant property, on the other hand, would be sent to the Cook County Sheriff's Police Evidence and Recovered Property Section ("ERPS") in Maywood, Illinois for storage. (*Id.*; Pls.' Ex. 38 at 3, 16.)

The audit, however, observed that after the compliant/non-compliant property policy was implemented, "[e]xcessive property items [we]re being destroyed." (Pls.' Ex. 38 at 1.) One reason the audit posited for the rise in property destruction was the location of the ERPS facility.

---

[3] "Compliant property" is defined as "United States Currency," US Government Issued Identification," "plain wedding band," "keys," "outer garments," "prescription medicine," "prescription eyeglasses," "soft covers [sic] legal documents," "shoelaces," and "soft covered Bible or Koran." (Pls.' Ex. 38 at 2.) "Non-compliant property" is defined as "weapons," "narcotics," "biohazards/health hazard materials," "bomb/ammunition/fireworks," and "all other items not listed in allowed compliant property, e.g., cell phones, cell phone chargers, hats, belts, etc." (*Id.* at 3.)

8

The audit suggested that it was simply inaccessible to many former jail prisoners. The audit remarked that the Evidence and Recovered Property Section "[was] not a convenient or practical location to store non-compliant property items" for individuals who were arrested in the outskirts of Cook County. (Pls.' Ex. 38 at 1.) One ERPS official reported to the auditors that "between 85% to 90% percent [sic] of outlying courthouse arrestee's [sic] do not get their non-compliant property after being discharged from the CCDOC, or after arrestees [sic] court cases are adjudicated." (*Id.*)

Moreover, Plaintiffs' expert, Vaughn, opines that the compliant/non-compliant property policy prematurely causes the destruction of property before detainees have an opportunity to retrieve it. Citing the July 2011 audit, Vaughn remarked that the Evidence and Recovered Property Section "destroys detainee property without checking whether or not the owner of the property is still confined at the jail." (Pls.' Ex. 59 at 18.) Indeed, the auditors reported that an official from the ERPS stated that "excess non-compliant property is reviewed quarterly and *unclaimed property older than 6 months is disposed of*." (Pls.' Ex. 38 at 4) (emphasis added.) If the ERPS is discarding unclaimed property older than six months, regardless of whether the property owner remains in confinement, then there is no feasible way the owner can obtain the item before its destruction.

Thus, the summary judgment record shows that several disputed issues of material fact remain. Cook County contends that its procedures are designed to facilitate the storage and retrieval of detainee personal property until 90 days after a detainee has been discharged. But Plaintiffs have marshaled evidence demonstrating that the area in the jail used "to store inmate personal property is so badly organized" that inmates have a slim chance of actually recovering their items upon release or being transferred to IDOC. (Pls.' Ex. 59 at 22.) And some

procedures, such as the compliant/non-compliant property procedure, appear to make non-compliant property so difficult to retrieve for detainees as to render the loss or destruction of this category of property inevitable.

Defendants argue that even if such issues of fact exist, they are entitled to summary judgment because post-deprivation remedies are available to Plaintiffs. Defendants rely on *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001), for the proposition that "[w]hen a state law remedy for a constitutional tort exists, the opportunity to pursue a claim in state court satisfies due process of law." (Defs.' Reply Mem. at 5.) The passage that Cook County cites from *Newsome* derives from *Parratt v. Taylor*, 451 U.S. 527, 535-544 (1981), which held that "due process is not violated when a state employee negligently deprives an individual of property, provided that the state makes available a meaningful postdeprivation remedy." *Gable*, 296 F.3d at 539. "The rationale behind *Parratt* was that 'when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur.'" *Id.* at 539-40 (quoting *Hudson v. Palmer*, 468 U.S. 517, 533, (1984)).

As this court has previously held, *Parratt* is inapplicable here because Plaintiffs claim that their property losses resulted not from "random and unauthorized acts," but from Defendants' policies and practices.[4] *See* Order, ECF No. 42 (rejecting Defendants' reliance on

---

[4] Moreover, it is unclear whether the state law claims of conversion and replevin that Defendants encourage detainees to pursue would "comport with due process." *See Gates v. City of Chicago*, 623 F.3d 389, 410-12 (7th Cir. 2010). It is undisputed that the CCDOC directs detainees "seeking compensation for missing personal property" to file a claim "against the Cook County Department of Corrections in PRO-SE court" at the Daley Center, 50 West Washington Street-Room 602, Chicago, Illinois. (*See* Pls.' Ex. 10.) But, when Plaintiffs followed this instruction, the Cook County State's Attorney's Office either moved to quash service or moved to dismiss on the basis that the Department of Corrections "is an entity that cannot be sued" and is "only a department under THOMAS DART, SHERIFF OF COOK COUNTY." (Pls.' Ex. 12.) In the cited instances, the detainee-plaintiffs' use of the wrong party name led to the dismissal of their

10

*Parratt v. Taylor*, 451 U.S. 527 (1981) because "[t]his lawsuit is premised on *Monell* liability"). *See also Wilson v. Civil Town of Clayton*, 839 F.2d 375, 380 (7th Cir. 1988) ("[A] complaint asserting municipal liability under *Monell* by definition states a claim to which *Parratt* is inapposite."); *Saiger*, 2014 U.S. Dist. LEXIS 83206, at *12-13 ("When a deprivation is the result of a random and unauthorized act by a government actor, then post-deprivation relief is sufficient. This is so irrespective of whether a property or liberty interest is at stake. If, however, the state system itself destroys the protected interest, then the sorts of post-deprivation remedies that are considered adequate for random and unauthorized acts are insufficient.") (citations omitted).

Normally, having fully assessed the second factor in the due process analysis, the court would turn to the third factor—the government's interest. *See supra* at 5. But the parties did not address this issue in their briefs. Defendants offer neither argument nor record citation to show the expense they would undergo in organizing detainee property in a way which would allow it to be retrieved. Perhaps the undertaking would be enormous, but no evidence was presented in the summary judgment record. Nor is there any basis for the court to assess these costs.

IV. **CONCLUSION**

Because Defendants have not established that they are entitled to judgment as a matter of law, their motion for summary judgment is denied.

---

cases. (*See* Pls.' Exs. 13, 14, 18.) When informed of the inconsistency between the CCDOC's instructions and the State's Attorneys' Office strategy for opposing detainee *pro se* complaints, Defendants responded: "Plaintiffs' allegations [regarding "the information on how to obtain legal remedies for allegedly lost or stolen property"] are irrelevant. It is axiomatic that one should not take the legal advice of an adversary." (Reply at 11 n. 3.) The court does not see how Defendants can square their assertion that state law remedies provide adequate due process with their knowing provision of incorrect legal advice in connection with those remedies.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 31, 2015