# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Leonicio Elizarri, *et al.*, individually, and for a class,<br><br>    Plaintiff,<br><br>    v.<br><br>Sheriff of Cook County and the County Of Cook,<br><br>    Defendants. | 07 C 2427<br><br>Honorable Joan Gottschall |

## DEFENDANTS' RULE 50(a) MOTION
## FOR JUDGMENT AS A MATTER OF LAW

Defendant Sheriff THOMAS J. DART, Sheriff of Cook County, by its attorney, ANITA ALVAREZ, State's Attorney of Cook County, and through her Assistant State's Attorneys, MICHAEL J. SORICH, NICHOLAS CUMMINGS and ANNA G. O'CONNOR and pursuant to FEDERAL RULE OF CIVIL PROCEDURE 50(a), move for judgment as a matter of law based upon the evidence submitted in this trial. In support thereof, the Sheriff's Office states the following:

## INTRODUCTION

Plaintiffs Leonicio Elizarri, Ronald Richardson and Grzegorz Zawadowicz (collectively the "individual Plaintiffs"), individually and on behalf of a class (the "Class"), have filed a civil action against the Office of the Sheriff of Cook County, in his official capacity (the "Sheriff's Office"). *See Elizarri v. Sheriff of Cook County*, 2015 U.S. Dist. LEXIS 41319, *7 (N.D. Ill. March 31, 2015). Plaintiff has filed a Section 1983 claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) alleging: (1) that the Sheriff's Office maintains policies and practices that caused their property to have been lost or stolen and (2) that this custom or practice violates their

rights of due process. The evidence in this case does not establish such a custom or practice or, in fact, any violation of due process.

As this Court has recognized, a "procedural due process claim requires the plaintiff to show (1) that he was deprived of a protected liberty or property interest, and (2) that he did not receive the process that was due to justify the deprivation of that interest." *Id. citing Armato v. Grounds,* 766 F.3d 713, 721-22 (7th Cir. 2014). The evidence offered at trial fails to show that the Sheriff's office intentionally deprived Plaintiffs of a protected liberty or property interest and fails to show that Plaintiffs lacked a post deprivation remedy. Consequently, under FEDERAL RULE OF CIVIL PROCEDURE 50(a), this Court should enter judgment for The Sheriff's Office as a matter of law based upon the evidence submitted in this trial.

## LEGAL STANDARD

FEDERAL RULE OF CIVIL PROCEDURE 50(a) states:

Judgment as a Matter of Law.

(1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(2) *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Fed. R. Civ. P. 50(a). Under Rule 50(a), "the district court must enter judgment if, under the governing law, a reasonable fact-finder could not find for the nonmoving party." *Shields*

*Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992). That is the case here -- based upon the evidence in the record, a reasonable fact-finder cannot not find for the individual Plaintiffs or for the Plaintiff Class.

### ARGUMENT

To hold the Sheriff's Office liable under § 1983, Plaintiffs must demonstrate culpability (a policy attributable to the Sheriff's Office) and causation (the policy caused a constitutional deprivation). *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). As a matter of law, Plaintiffs fail on both accounts for they can neither show any policy attributable to the Sheriff's Office or that any such policy caused a constitutional deprivation.

To prove their claim, the Plaintiff Class must establish each of the following propositions by a preponderance of the evidence:

1. There was a widespread custom or practice which allowed plaintiffs' property to be lost or stolen before it could be returned to plaintiffs when they left the Jail.

2. The custom or practice was the moving force behind plaintiffs' losses. A custom or practice is a moving force behind a constitutional violation if the custom or practice was the direct cause of the loss.

3. The Defendant was deliberately indifferent to Plaintiffs' losses. To show "deliberate indifference," the Plaintiffs must prove by a preponderance of the evidence these two things:

    (a) That the Defendant was aware of a substantial risk that the property storage practices in effect would cause a loss of a Plaintiffs' property;
    (b) The Defendant failed to take corrective measures to prevent such losses.

Jury Instruction #___. The evidence admitted at trial shows that: (1) Plaintiffs failed to establish a widespread custom or practice of the Sheriff's Office that served to deprive them of any constitutional right; (2) Plaintiffs failed to establish knowledge of a risk of harm to the constitutional rights of Plaintiff Class on the part of the Sheriff's Office; and (3) that if the

Sheriff's Office had knowledge of a custom or practice that served to put the constitutional rights of the Plaintiff Class at risk, the Sheriff took substantial steps to try and minimize that harm.

**I. Plaintiffs Failed to Establish a Widespread Custom or Practice of the Sheriff's Office that Served to Deprive Them of Any Constitutional Right.**

As an initial matter, Section 1983 requires fault on behalf of the Sheriff's Office in order to hold it responsible for Plaintiffs' due process claim pursuant to *Monell*, 436 U.S at 694. To prevail on their claim, Plaintiffs were required to demonstrate that the Sheriff's Office, through its own deliberate conduct, was the moving force behind the alleged injury. *Bd. of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). Plaintiffs needed to establish a direct causal link between a custom or policy of the Sheriff's Office and the unconstitutional conduct that they allege. *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997). Causation principles should not be applied in broad terms that make governmental entities liable for the actions of their employees. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 306 (7th Cir. 2009). "As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Defendant cannot be held liable under Section 1983 based on *respondeat superior* liability. *Id.* at 120.

The Fourteenth Amendment provides that no State shall "deprive any person of . . . property, without due process of law." U.S. CONST. amend. XIV, § 1. Thus, it does not "protect[ ] against all deprivations of . . . property by the State . . . [but] only against deprivations without due process of law." *Parratt*, 451 U.S. at 537. Therefore, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Only when an injury results because of the existence of an official governmental policy

may the governmental entity be sued. *Id.* As a result, a Section 1983 due process claim cannot rest on a negligence theory, *see Parratt*, 451 U.S. at 541; *Daniels v. Williams*, 474 U.S. 327, 333 (1986); *Del Raine v. Williford*, 32 F.3d 1024 (7th Cir. 1994), or a theft theory, *see Gable*, 296 F.3d at 540. Both acts are essentially unforeseeable. *Id.*; *Monell*, 436 U.S. at 541.

### a. Plaintiffs have not shown conduct by the Sherriff's Office that in and of itself served to violate their constitutional rights or any causal link to conduct of the Sheriff's Office that served to violate their constitutional rights.

Plaintiff contends that between June 6, 2005 and June 30, 2013, the Sheriff's office had a custom or practice in place that violated the Class members' procedural due process rights and deprived the Class members of property without due process of law. Under *Gable*, to demonstrate liability, Plaintiff must demonstrate culpability (a policy attributable to the Sheriff's Office) and causation (the policy caused a constitutional deprivation to the Class members). *See Gable*, 296 F.3d at 537, *citing Baxter*, 26 F.3d at 735. The Court has determined evidence of policy or custom is demonstrated by "conduct that is so persistent and widespread that it is the Office of the Sheriff of Cook County's standard operating procedure. A persistent and widespread pattern of conduct may be a custom even if the Office of the Sheriff of Cook County has not formally approved the conduct, so long as Plaintiffs prove that a policy-making official or officials knew of the pattern and allowed it to continue." Def. Supp. Inst. #3.

Plaintiffs have not shown that such a custom and practice directly deprived them of their property. The evidence presented at trial of the Sheriff's Office's conduct included storing detainee property according to the inmate's jail ID number Tr. Vol. 4[1], 461:1-6; storing bags containing detainee property in file cabinets located in sealed bags; storing detainee in a

---

[1]  Tr. Vol. 4 refers to Trial proceedings from 1-28-16, AM session.

systemic, logical fashion, Tr. Vol. 4B[2], 607:4-9; storing the property of former inmates who had been discharged in boxes in the same secure room as the property of detainees currently in the Cook County Jail, Tr. Vol. 4B, 601:22-25; 602:1; moving the property of former detainees no longer in the jail to a different secured room Tr. Vol. 1[3], 1128:4-6; a method of searching for detainee property that was not located initially Tr. Vol. 4B, 612:8-19; and a method of memorializing detainee information for the purpose of contacting former detainees in the event the property initially deemed lost is found Tr. Vol. 4B, 612:20-25; Tr. Vol. 5[4], 675:18-21. Additionally, the evidence adduced at trial showed the Sheriff's Office did not destroy or otherwise dispose of any property belonging to present or former detainees at Cook County Jail stored at Cook County Jail during the class period. Tr. Vol. 4, 459:2-8. None of these customs or practices serve to violate Plaintiffs' right to their property without due process of law.

Furthermore, the Sheriff's Office had written procedures in place including general orders [cite] and post orders for each post in the divisions Tr. Vol. 4, 433:10; 15-17. These orders, policies and procedures, Pl's. Ex. 7, 10, 15; Def. Ex. 3, 4, 7, 8, 11 and 13, provide a framework for the Sheriff's Office for handling of detainee property. Plaintiffs have not shown how any of these policies lead to property being lost or stolen.

b. **No evidence of actual harm on a class wide basis.**

Furthermore, there is no evidence adduced at trial showing a widespread loss of property as a result of the Sheriff's Office's policies or practices. Rather, Plaintiffs have demonstrated

---

[2]     Tr. Vol. 4B refers to Trial proceedings from 1-28-16 PM session.

[3]     Tr. Vol. 1 refers to Trial proceedings from 2-2-16 AM session.

[4]     Tr. Vol. 5 refers to Trial proceedings from 1-29-16 AM session.

random losses of property. Plaintiffs produced five putative class members[5] and evidence of a log maintained by Sheriff's employees for "missing property." Plaintiffs failed to submit to the jury any numbers of individuals who lost property, or any pattern of occurrences (e.g. property was consistently lost during a specific time period) such as to establish a widespread custom of which policymakers could be aware. *See Gable*, 296 F.3d at 538 ("three incidents were too few to indicate the City had a widespread custom of which City policymakers had reason to be aware.") This is particularly important in the face of the number of detainees processed into and out of Cook County Jail on an annual basis. The evidence at trial showed approximately 489,000 individuals *released* from Cook County Jail between 2008 and 2013. Tr. Vol. 1, 910:17-25. In comparison, Plaintiffs produced five specific incidents of lost property in that same time frame. One witness, Leon Syzmanski, who claimed he never had his orthopedic shoes returned when he left Cook County Jail in December 2011, entered Cook County Jail on another earlier occasion in 2011. Tr. Vol. 2B[6], 183:7-9]. Mr. Syzmanski testified his shoes were returned to him after the first stint. Tr. Vol. 2B, 183:15-17. Other witnesses who were frequent visitors of the jail had similar testimony. Tr. Vol. 2B, 210:19-25; 211:1-5. This does not demonstrate a pattern or practice; rather it demonstrates the loss of property is random. Accordingly, Plaintiffs failed to prove a widespread practice of which the Sheriff's Office and its policymakers would be aware of.

---

[5]  3 of the 5 witnesses appear in the missing property log book, the only evidence put forth that they made a "timely claim" for their property, making them eligible for class participation.

[6]  Tr. Vol. 2B refers to Trial proceedings from 1-26-16, PM session.

## II. Plaintiff's Fail to Establish Deliberate Indifference.

### a. Plaintiffs fail to establish the Sheriff's Office had actual knowledge of a substantial risk of harm to their constitutional rights.

At trial, Plaintiffs produced evidence of two audits—one in 2011 regarding the practices and procedures of handling detainee clothing at the jail, Pl. Ex. 52, and one in 2011 regarding the handling of non-compliant property at the suburban courthouse districts, Pl. Ex. 53[7]. Neither audit served to put the Sheriff's Office on notice—much less give the Sheriff's Office actual notice—of a substantial risk of harm of loss or theft of inmate property. The audits only served to inform the Sheriff's Office of a lack of uniform policy on how to handle inmate clothing and the inconvenience of maintaining property in suburban Cook County. In 2012, following the 2011 audit, Pl's. Ex. 52, the Sheriff's Office centralized the storage of clothing in the jail. Tr. Vol. 4B, 656:1-12; Tr. Vol. 1, 906:22-25; 907:2. While the evidence shows the Sheriff was aware of an issue with lack of space to store substantial amounts of inmate property and a lack of space for storage of substantial amounts of property belonging to persons no longer detained in Cook County Jail, there is no evidence produced at trial the Sheriff had actual knowledge of a widespread practice or custom that would risk property being lost or stolen such that Plaintiffs individually or as a class were deprived of the constitutional right to their property. Additionally, there has been no evidence at trial that the Sheriff's Office had actual knowledge of loss of property, or a demonstration of the loss of property that was so widespread that policy makers of the Sheriff's Office should have known of the issue.

---

[7] Pl. Ex. 53 specifically dealt with the procedures in place regarding non-compliant property at the Maywood and Markham lockups, not the non-compliant property stored at Cook County Jail.

8

### b. No Evidence of failure to take corrective action.

Plaintiffs have not shown that the Sheriff failed to take appropriate corrective action to improve the manner in which personal property was returned to released detainees. Plaintiffs did not offer any evidence at trial to show that the Sheriff's office was deliberately indifferent to the right to their property.

Assuming *arguendo* the evidence at trial shows the Sheriff's Office has policies and practices causing Plaintiffs property to be lost or stolen and the policymakers of the Sheriff's Office knew of these policies, there is overwhelming, clear and convincing evidence that the Sheriff's Office took action to in the face of that risk. "The extent and nature of the specific measures taken by [the Sheriff's Office] in this case support the conclusion that [the Sheriff's Office] was not deliberately indifferent." *Gable*, 296 F.3d at 539 (citing *Frake*, 210 F.3d at 782); *see also Frake*, 210 F.3d at 782 (finding no deliberate indifference in part because City took "many precautions" to prevent constitutional deprivations, even though deprivations continued to occur).

The evidence at trial shows the Sheriff constantly updated several policies. For example, the Sheriff's Office changed the policy regarding the kinds of property that could come into the jail in 2007. Tr. Vol. 3[8], 343:23-25. Additionally, the clothing procedures were altered such that detainee personal clothing was stored in a central location of the jail. Tr. Vol. 1, 906:22-25; 907:2. Moreover, the Sheriff's Office instituted policies to reduce the amount of property taken in to the jail due to limited space; installed cameras in the property room Tr. Vol 3, 356:15-16; Tr. Vol. 4B, 604:18-24; Tr. Vol. 5, 759:25; instituted controls in the trust office Tr. Vol. 3, 356:16-18; 21-22; Tr. Vol. 5, 759:20-24; installed drop safes, Tr. Vol. 5, 760:3-8; improved their

---

[8] Tr. Vol. 3 refers to Trial proceedings 1-27-16 AM session.

9

computer systems, Tr. Vol. 1, 880:7-10; and designed, installed and implemented a new property management system at the jail which went into effect June 1, 2013 Tr. Vol. 1, 907:13-21; Tr. Vol. 5, 760:1-2.

Furthermore, the Sheriff's Office had a multitude of possibilities in place for detainees to retrieve their property while they remained in Cook County Jail and when they were released to the Illinois Department of Corrections ("IDOC"). Detainees could utilize correctional rehabilitation workers to facilitate the retrieval of their property Tr. Vol. 4B, 609:5-6; write letters to friends or family members authorizing them to pick up their items Tr. Vol. 4B 609:5-6; and each detainee was offered a form prior to being transferred to IDOC where they could designate someone to pick up their property. Def. Ex. 24; Tr. Vol 4, 454:22-25; 455:1-6; 457:5-9. Moreover, the Sheriff's Office spent over $500,000 to inventory and catalog the abandoned property in the basement of Cermak. Tr. Vol. 2B[9], 149:14-23; Tr. Vol. 5, 727:12. The evidence at trial indicates two things: the Sheriff held on to the property due to this pending action and no one, including any members of the Plaintiff Class came and made a claim for any of that property. However, the Sheriff's Office now has the tools in place to assist with locating property should someone make a claim. Tr. Vol. 5, 727:18-20. Consequently, the actions of the Sheriff's Office support the conclusion that it was not deliberately indifferent. Accordingly, the Sheriff's Office is entitled to judgment as a matter of law.

### III. State Law Provides Post Deprivation Remedies.[10]

Notwithstanding the Plaintiffs' inability to prove any widespread custom or practice that was the moving force behind any deprivation of any constitutional right, or the Plaintiffs'

---

[9] Tr. Vol. 2B refers to Trial proceedings from 1-26-16 PM session.

[10] Plaintiffs do not and cannot contest the fact that State law affords a pre-deprivation hearing to each arrestee. *See Tucker*, 682 F.3d at 661.

inability to prove the Sheriff's Office was deliberately indifferent; assuming *arguendo* Plaintiffs have proven an intentional deprivation of a constitutional right, they have not proven they do not have an adequate remedy. "An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause…if a meaningful post deprivation hearing for the loss is available." *Gable*, 296 F.3d at 540 (internal citation omitted). If Plaintiffs have proven the Sheriff's Office was deliberately indifferent, Plaintiffs must show there was no adequate post deprivation remedy in order to be successful in their claim.

The evidence at trial indicates detainees are given notice of what may happen to their property if it remains unclaimed. Def. Ex. 24; Tr. Vol 4, 458:24-25; 459:1. Additionally, Illinois provides a number of such post-deprivation remedies. First, the Sheriff's Office affords arrestees with an internal complaint procedure [cite Ruble], and Leon Syzmanski testified he was given information on how to obtain legal remedies for allegedly lost or stolen property. Tr. Vol 3, 187:11-14. Second, Illinois law allows arrestees to bring causes of action under a number of legal theories, such as conversion, *see*, *e.g.*, *Cirrincione v. Johnson*, 184 Ill. 2d 109, 703 N.E.2d 67 (Ill. 1998); replevin, *see*, *e.g.*, 735 ILCS § 5/19-101; bailment, see, e.g., *Gable*, 296 F.3d at 540; and negligence, *see*, *e.g.*, *Mount Zion State Bank & Trust v. Consol. Communications*, 169 Ill. 2d 110, 660 N.E.2d 863 (Ill. 1995). The Seventh Circuit considers these post-deprivation remedies to be adequate. *Gable*, 296 F.3d at 531; *Bonner v. Coughlin*, 517 F.2d 1311 (7th Cir. 1975).

The evidence presented at trial showed one individual, Leon Szymanski filed a lawsuit in state court. Tr. Vol. 2B 174:11-16. His lawsuit was dismissed pursuant to 735 ILCS 5/2-619. Def. Ex. 63. Section 5/2-619 reads in relevant part:

11

> Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds…
>
> (2) That the plaintiff does not have legal capacity to sue or that the defendant does not have legal capacity to be sued.
>
> (3) That there is another action pending between the same parties for the same cause.

735 ILCS 5/2-619(a) (LEXIS 2015). Moreover, Szymanski testified he received notice of the instant case with the opportunity to opt-out and file his own lawsuit. Def. Ex. 66. Mr. Szymanski did not opt out. Vol 2B, 190:2-4. There was no other evidence of any Plaintiff attempting to make use of any state law remedies. The fact that Plaintiffs did not avail -- or incorrectly availed -- themselves to these remedies does not make these actions any less available or adequate. "A state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Gable*, 296 F.3d at 563 (*quoting Dusanek v. Hannon*, 677 F.2d 538, 547 (7th Cir. 1982) (internal quotation marks omitted).

Therefore, Plaintiffs failed to establish the remedies available to them were inadequate. Accordingly, they have not proven the Sheriff's Office violated any constitutional right. As a result, Plaintiffs have not established that they are entitled to any remedy under Section 1983. Judgment in favor of The Sheriff's Office pursuant to Rule 50(a) is appropriate.

## CONCLUSION

WHEREFORE, the County The Sheriff's Office respectfully that this Honorable Court: (a) grant The Sheriff's Office' judgment as a matter of law based upon the evidence submitted in this trial along with fees and costs and (b) grant such other and further relief that this Court deems just and reasonable.

Respectfully submitted,

ANITA ALVAREZ
State's Attorney of Cook County

*/s/ Nicholas E. Cummings*
Nicholas E. Cummings
Assistant State's Attorney
Torts/Civil Rights Litigation Section
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-6638
nicholas.cummings@cookcountyil.gov

*/s/ Michael J. Sorich*
Michael J. Sorich
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-5170

*/s/ Anna G. O'Connor*
Anna G. O'Connor
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-6665